### UNION ELECTRIC COMPANY OF MISSOURI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10252.    Promulgated May 11, 1948.

*Walter S. Alt, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

## OPINION.

MURDOCK, *Judge*: The Commissioner has determined that the probable useful life of the dam is 100 years, and the probable useful life of the structures and improvements is 60 years, and has allowed deductions for each year of one one-hundredth of the cost of the dam and one-sixtieth of the costs of the structures and improvements. The petitioner does not contest the Commissioner's determination that the probable useful lives of those assets will extend beyond the 50-year period of the license. It contends that their useful lives to it are limited by the 50-year term of the license, so that a proper annual deduction is one-fiftieth of their costs. Both sides recognize that the assets were used in the petitioner's business and the petitioner is entitled to some deduction under section 23 (1) for their exhaustion and wear and tear in use. No question of "obsolescence" has been raised or discussed. Section 23 (1) authorizes as a deduction "a reasonable allowance for the exhaustion, wear and tear * * * of property used in the trade or business." The purpose of that provision is to return to the owner the cost of the assets tax free during their useful lives through deductions from income. "The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost." *United States* v. *Ludey*, 274 U. S. 295.

The question here is, What is a reasonable annual allowance under the facts of this case, or, to state it differently, has the Commissioner been unreasonable in spreading the deductions over the probable useful

life of the assets for hydroelectrical purposes, instead of over the 50-year period during which the petitioner is assured of their use in its business under the existing license? The petitioner has certain rights under sections 14 and 15 of the Federal Power Act, as amended August 26, 1935, 16 U. S. C. A., sections 807 and 808 (formerly the Federal Water Power Act). Section 14 provides that the United States, after due notice, may take over and operate a project like this one, after the expiration of the license. It must take all property held by the licensee then valuable and serviceable in the business which is dependent for its usefulness upon the continuance of the license, and pay to the licensee its net investment therein, not to exceed the fair market value of the property, plus reasonable damages to other dependent property not taken. Section 15 provides that the Commission is authorized to issue a new license to the original licensee or to a new licensee, if the United States does not take over the project at the expiration of the original license. A new licensee is required to take over the original licensee's property and pay for it as the United States would have to do if it took over. The "net investment" is defined, in so far as is here material, as the cost less depreciation and unappropriated surplus.

No inference arises from the evidence that the plant and equipment will not be valuable or serviceable at the end of the existing license. It must be assumed for the purpose of this case that at the end of the present license the petitioner will be allowed to continue operations under a new license of some kind or will be compensated at that time by a successor for the unexhausted cost of the assets in question. The petitioner has not shown any reasonable probability that its assets will have no value to it at the end of the 50-year term of the existing license and it has not shown error in the Commissioner's use of the longer periods of probable useful lives of those assets. *Eimer & Amend*, 2 B. T. A. 603.

The petitioner has not cited any cases which support its contention. Cases in which the cost of a license, franchise, lease, or similar asset has been allowed to be recovered by depreciation deductions spread ratably over the term of the license, franchise, or lease are not in point. Likewise, cases allowing the cost of assets to a lessee to be recovered over the period of the lease, where the assets become the property of the lessor at or before the termination of the lease without compensation to the lessee, are not in point. Those two lines of cases are distinguishable because in them there was at least a reasonable probability that the asset, the cost of which was being recovered, would have no value to the taxpayer at the end of the license, franchise, or lease and, therefore, it was reasonable to allow the cost to be recovered over that limited period, whereas here the reasonable probability is that the assets in question will have value to the petitioner even after the license is terminated,

which value it can enjoy either through continued use or through sale, with the result that it is more reasonable to allow their cost to be recovered over the period of their probable useful life than over the term of the license.

The petitioner next contends that, in any event, it is entitled to additional annual deductions which will enable it to recover, during the life of the dam, amounts paid for accessories such as land and flowage rights incident to the construction of the reservoir and easements for the transmission lines from the plant to the vicinity of St. Louis, Missouri. It has been held in other cases that no deductions for depreciation are allowed to recover the cost of land owned in fee, of franchises or licenses in perpetuity, and of other assets which do not exhaust with use. The Commissioner argues that the expenditures in question were made to acquire assets of that type and, furthermore, the petitioner has failed to show with "reasonable certainty" that the usefulness and value of the assets thus acquired will terminate at the end of the useful life of the present dam or at any other particular time.

The respondent is wrong in holding that these expenditures resulted in the acquisition of assets which do not exhaust with use and are not subject to allowances for depreciation. A substantial part of the expenditures did not result in the acquisition of any asset separate and apart from the hydroelectric plant. For example, the amount spent for moving bodies from cemeteries in the territory to be used as the reservoir and for the replacement of public highways and buildings, which had to be closed or destroyed because of the reservoir, were all a part of the cost of the complete hydroelectric plant, but did not result in the acquisition of any separate asset. The terms of some of the rights, easements, and other interests in land are coextensive with the period during which the present dam, or any other dam at or near the same site, will be used for water power purposes.[1] The evidence shows also that the interests in land involved in this issue had no value except as they were used in connection with the production of hydroelectric power at this location. Depreciation is allowable where the useful life of an asset can be estimated with reasonable certainty. Thus, if the probable useful life of this site for hydroelectric power purposes were known, the expenditures in question, being a part of the cost of the petitioner's plant, could be recovered over that period.

The petitioner's proof on the question of the probable useful life of this site is not particularly impressive. A feeble attempt to show that the reservoir would be too full of silt for profitable use at the end of the 100-year life of the dam failed, but that failure is not necessarily fatal. Absolute certainty as to the useful life of assets is not required in order to compute deductions for depreciation. Here, all of the ex-

---

[1] Some are for a shorter period, but their separate cost has not been shown.

penditures in question represent costs of the complete power plant and the evidence indicates, with reasonable certainty, that the benefit of those expenditures will cease at the end of the useful life of the existing reservoir. The respondent has determined that the life of the present "dam" is 100 years. The record does not show how he made that decision, but it seems fair to assume that he was considering the life of the dam as a complete unit, i. e., the barrier, the body of water which it confines and the reservoir holding that water, not just the barrier alone. For example, the record shows that expenditures, in addition to those for moving dead bodies, were made to excavate or prepare the reservoir area to receive the waters to be confined by the barrier, and the Commissioner must have included them in the cost of the "dam" under the first issue, since none of them are included in the expenditures involved in the second issue. If that was his determination, then the answer here is apparent. Furthermore, although the evidence is not as convincing as it might be, nevertheless, it leads to the conclusion that the benefit of the expenditures in question will be limited, in all probability, to the life of the present dam, and a reasonable allowance for their exhaustion, wear and tear, during each of the taxable years, is one one-hundredth of their total. Cf. *Illinois Pipe Line Co.*, 37 B. T. A. 1070.

Reviewed by the Court.

*Decision will be entered under Rule 50.*