DOROTHY CARUSO, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46810.   Filed February 11, 1955.

*Paul C. Guth, Esq.*, for the petitioner.
*Donald J. Fortman, Esq.*, for the respondent.

838

OPINION.

ARUNDELL, *Judge:* This case presents an unusual facet of depreciation. Here, we are not concerned with the appropriate rate of depreciation during the life of the asset but, rather, what the appropriate rate should have been during its life, plus the consequences of the failure to take the appropriate deduction during the life of the asset.

The petitioner owned a house built on leased land. She bought the house and acquired the lease when it still had 19 years to run. She

used the premises for residential purposes for a while and, with approximately 17 years left to run on the lease, she converted the building to rental property and subleased. There was no provision for renewal in the lease. The petitioner did have the right to remove the building within 20 days following the end of the term. However, the building was a 4-story brick row house, with basement. As a practical matter, it was impossible to remove the building without literally demolishing it.

About a week before the termination of the lease, in consideration of $1,000, the petitioner sold her right to remove the building to the lessor-owner of the land.

The petitioner did not take any depreciation on the building on her returns for the years when the house was used as rental property. Instead, on her return for the year in which the lease terminated, she reported a loss on the building by determining that she would not have fully depreciated the building if she had been depreciating at the rate allowable for the useful life of the building. Her loss was computed by subtracting from her basis in the building the aggregate annual depreciation she would have been allowed had she been depreciating the building at a rate determined by its useful life. The loss was then reduced by the $1,000 which she received for surrendering her right of removal.

The respondent disallowed the loss. He contends that, in view of the fact that petitioner's lease was not renewable, she should have been depreciating the building over the period of the lease. Consequently, at the end of the term, her basis in the building was zero, according to the respondent's theory. Thus, she did not have any loss but actually realized a long-term capital gain in the amount of the $1,000 which she received for her right to remove the building.

It is now established that where a lease on ground provides a definite and fixed term, with no option to renew, the cost borne by the lessee in erecting buildings or making other capital improvements, which revert to the lessor at the end of the lease or lose their usefulness at that time, is to be prorated over the life of the lease, or the life of the property, whichever is shorter. The same rule obtains, even though the lease provides a renewal option, where the rental in the renewal period is to be based on a reappraisal of the property at the end of the term of the lease or where it is apparent that the right to renew will be worthless. Where, however, there is an option to renew on the same terms, the cost of the capital additions made by the lessee should be spread over the combined period named in the lease and the renewal period, or the life of the property, whichever is shorter. *Alamo Broadcasting Co.*, 15 T. C. 534; *Morris Nachman*, 12 T. C. 1204; *Standard Tube Co.*, 6 T. C. 950; *Bonwit-Teller & Co.* v. *Commissioner*,

53 F. 2d 381, certiorari denied 284 U. S. 690; *Duffy* v. *Central R. Co.*, 268 U. S. 55.

If there were nothing more to petitioner's case than a lease without right to renew, then we should be obliged, on the authority of the foregoing cases, to hold that she should have depreciated her building over the term of the lease.

However, the petitioner insists that, because she had the right to remove the building within 20 days from the end of the term, the building had a useful life beyond the end of the term and, therefore, the cost of the building should have been depreciated over its full useful life. She also claims she had a reasonable expectancy that the lease would be renewed at the end of its term. By these arguments she attempts to bring herself within the rule of those cases that hold that where capital improvements on leasehold property do not revert to the lessor automatically, or where the lessor or other successor in possession is required to purchase the improvements at the end of the term, then the capital items are to be depreciated over their useful life. *Union Electric Co. of Missouri*, 10 T. C. 802; *Stephen Ransom, Inc.*, 9 B. T. A. 120.

Petitioner argues that the rental that she was paying to the lessor was reasonable for the location. The inference is that her landlord could not get a higher rental for the ground than that she was paying and, therefore, there was reason to believe that the lease would be renewed at the end of her term. But we do not believe that the petitioner has established her point in this regard and we do not think that on this record it can be found that there was a reasonable expectancy that the petitioner's lease would be renewed.

Furthermore, we think that it would have been impossible for the petitioner to remove her building. As we have observed above, it was a 4-story brick row house with a partial party wall with an adjoining building. Petitioner offered no proof that the building could have been moved intact, or that it could have been moved in any manner, and still retain its value and usefulness as a habitable building. The witness called by petitioner testified that the building could not be moved. Consequently, the right to remove the building, realistically appraised, was virtually valueless. The most that this right gave petitioner was the right to demolish the building for whatever salvage value it might have. This case is not like *Stephen Ransom, Inc.*, *supra*, where the taxpayer owned a floating drydock which could be moved at the end of the lease term or, like *Union Electric Co. of Missouri*, *supra*, where a successor licensee in possession of the taxpayer's dam would be required to reimburse the taxpayer for the value of the property. Therefore, petitioner should have depreciated her basis in the building at the time it was converted to rental property over the remaining term of her lease.

There is another question in the case. On the hypothesis that the petitioner's adjusted basis in the building was zero at the time of its sale because she should have been depreciating it over the period of the lease, the respondent claims that the $1,000 which petitioner received for relinquishing her right to remove the building represents a long-term capital gain in that amount from the sale of a capital asset.

We do not agree with respondent's claim. Respondent's regulations state that "The proper allowance for * * * depreciation is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan * * * whereby the aggregate of the amounts so set aside, *plus the salvage value*, will, at the end of the useful life of the depreciable property, equal the cost or other basis of the property * * *." (Regs. 111, sec. 29.23 (l)–1, emphasis supplied.) If the petitioner had been properly depreciating her basis in the building, she would have an adjusted basis equal to the salvage value at the end of the lease term, that is, assuming that the building had a salvage value to her at the end of the lease. We think the building had some value; presumably, the $1,000 paid by the lessor for the surrender of the petitioner's right to remove indicates that the intact building was worth at least that much more than the leveled lot. Therefore, we think that what the lessor paid for was the residual value of the building. So considered, the $1,000 received by the petitioner was in exchange for her adjusted basis in the property and was not taxable income as suggested by respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*