The P. H. and J. M. Brown Company v. Commissioner.
P. H. & J. M. Brown Co. v. Commissioner
Docket No. 55073.
United States Tax Court
T.C. Memo 1959-162; 1959 Tax Ct. Memo LEXIS 85; 18 T.C.M. (CCH) 708; T.C.M. (RIA) 59162; August 20, 1959
*85 Carl F. Bauersfeld, Esq., for the petitioner. James E. Markham, Jr., Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in petitioner's income tax of $4,300.51, $4,252.65, $4,932.14 and $5,239.23 for the years 1947 through 1950, respectively. By amended answers respondent proposed an increased deficiency for 1949 of $35,510.45, making $40,442.59 the total amount in issue for that year. The sole issue is the amount of gain or loss realized by petitioner from the sale of property in 1949. The deficiencies for the other years are due to respondent's determination that petitioner had no net operating loss in 1949 which it could carry back to 1947 and 1948 or carry forward to 1950. Findings of Fact The stipulated facts are found. Petitioner, a Maine corporation organized in 1893, with its principal office in Portland, Maine, filed its returns for the years in issue with the collector of internal revenue for the district of Maine. These returns were prepared in accordance with the cash receipts and disbursements method of accounting. On August 1, 1866, John B. Brown leased unimproved land located *86 in Portland, Maine, from Eben Steele for 50 years. A portion of the lease provides: "The said Brown to improve said premises, at his pleasure; and at the termination of the lease, the leased premises with the buildings then standing thereon, are to revert to the Lessor; and if any buildings erected by said Brown shall have been extended over any land not owned by said Lessor, he (said Lessor) is to have the right, and does hereby agree to purchase the land covered by such extension, at such price as may then be agreed upon, by the parties, or their then representatives, and if said parties, or their then representatives should be unable to agree upon the price to be then paid for such land, the same shall be determined by three appraisers, to be appointed by the then Judge of Probate for Cumberland County; said land to be appraised exclusive of the value of the buildings extended over it." On the same date, Brown became lessee under two other 50-year leases, one from the heirs of Moses Quimby (or Quinby) and the other from Mary Quimby (or Quinby) of unimproved lots in Portland, Maine, which adjoined the land leased from Steele. These leases contained a clause similar to the one *87 previously quoted with regard to the Steele lease, except that they made no provision for excluding the value of buildings in the event an appraisal was required. Brown owned land contiguous to the land covered by these leases. His land, together with the leased land, is hereafter called the Falmouth property. Subsequent to August 1, 1866, but prior to 1893, Brown erected a 6-story brick building on the Falmouth property. A hotel occupied approximately 25 feet of the street floor frontage and all upper stories. The balance of the street floor frontage was divided into stores or offices. In 1893, the realty and leasehold rights owned by Brown were assigned to petitioner in exchange for stock. In 1916, just prior to the expiration of the Steele and Quimby leases, the petitioner informed its tenants by letter that under the terms of the ground leases the land and building covered by the leases reverted to the lessors as of August 1, 1916, and that the tenants, if they chose to remain, should make arrangements with representatives of the lessors. The tenants remained in possession without paying rent to either the petitioner or the representatives of the lessors. In August 1918, an action *88 for rent for use and occupation of the premises leased by Steele to Brown was brought by the trustee under Steele's will against petitioner in the District Court of the United States for the District of Maine. On October 18, 1919, that Court held petitioner liable as a holdover tenant on the ground that the continued presence of petitioner's tenants precluded a full and complete surrender and delivery of the premises to the lessors in 1916. The decision of the court was not appealed and has become final. In December 1919 or early in 1920, petitioner purchased the leased land improved by the building thereon for the following amounts: Property of Eben Steele
$52,500
Property of heirs of Moses Quimby
20,000
Property of Mary Quimby
6,500
Total purchase price
$79,000
In 1920 and 1921, petitioner made improvements to the building in the amounts of $102,269.29 and $275.56, respectively. During the years 1945 and 1947, petitioner made improvements to the building in the amounts of $7,640 and $10,214.98, respectively. The fair market value of the land owned by petitioner on March 1, 1913, on which was partially situated the building, was $50,000. The 1913 and 1920 *89 assessed valuations of the building and the land upon which it was situated, which were made by the city of Portland, Maine, are: Land Owned by Petitioner
Land Acquired in
Prior to 1919 and Portion
1919-1920 and Portion of
Entire
of
Building Erected Thereon
Building Erected Thereon
Property
1913
Sq. Ft.
Sq. Ft.
Assessed
values
Land
$24,100
16,236
$19,600
5,596
$ 43,700
Building
53,000
32,000
85,000
$77,100
$51,600
$128,700
1920
Assessed
values
Land
$24,100
16,236
$19,600
5,596
$ 43,700
Building
53,000
32,000
85,000
$77,100
$51,600
$128,700 The fair market value of the whole building on March 1, 1913 was $139,700. Respondent allowed petitioner depreciation at the rate of 2 per cent per annum and this amount was not less than the amount allowable for the building and improvements from March 1, 1913, or the date when the property or improvements were acquired, to the date of sale. Between the years 1927 and 1944, petitioner made the following expenditures which it charged to its reserve for depreciation: 1927
Replace boiler
$ 9,852.00
1929
Replace elevator
6,875.00
1929
New bathrooms
10,270.00
1935
Floor; labor repair; stock labor
- floor; paint; radiator; fau-
cet; partition; lighting fix-
tures; pipes in basement
1,070.94
1936
New ceilings
109.00
1937
Walls and ceilings
680.00
1938
Siding and boiler
646.89
1939
Laying new floor
$ 133.00
1940
Walls
305.24
1941
Gutters - brick wall
1,138.50
1943
Exit (new)
264.68
1944
Water lines - soil pipe
409.53
$31,754.78
*90 On July 1, 1949, petitioner sold the Falmouth property and the building located on it for $225,000. The net proceeds of the sale were $219,996.30 after deducting selling expenses of $5,003.70. Respondent determined in his deficiency notice that $139,700 and $50,000 were the respective March 1, 1913 fair market values of the building and land owned by petitioner on that date. To the $139,700 he added the cost of subsequent improvements and $48,992 for "Purchase in 1920 of section of building constructed on leased land allocated between land and building on basis of assessed values at time of purchase" to arrive at petitioner's depreciable basis in the building. He deducted from this basis "depreciation allowed or allowable, less improvements of $31,754.78 charged to reserve for depreciation" in arriving at adjusted basis. In his amended answer respondent alleged that the "part of the building located on the land owned on March 1, 1913 had a fair market value of $81,538.46" on that date. To this amount he added the cost of the improvements and the $48,992 to arrive at petitioner's depreciable basis. In computing depreciation respondent made no allowance for the $31,754.78. In his *91 second amended answer respondent alleged that petitioner had no basis in the building on August 1, 1916. He computed petitioner's depreciable basis for subsequent years by adding the cost of the improvements to the $48,992. The adjustment alleged for "depreciation allowed" was identical to that determined in the notice of deficiency. Opinion Although not so posed by the parties, the issue in this case may be narrowed to the question of what is the proper adjustment to basis for depreciation for the period March 1, 1913 to August 1, 1916. The parties agree that the amount of depreciation allowed thereafter equaled, if it did not exceed, the depreciation allowable. Petitioner concedes that the basis of its building must be adjusted by this amount in computing the gain or loss on the sale, and respondent does not seek a larger adjustment for that period. Sec. 113(b)(1), I.R.C. 1939. Respondent apparently concedes that the adjustment for depreciation is to be reduced by those expenditures made by petitioner from 1927 through 1944, which petitioner charged to its reserve for depreciation. It is stipulated that: "21. Depreciation at the rate of 2% per annum was allowed and such amount *92 was not less than the amount allowable for the building, and improvements made thereon, known as the Falmouth Block from March 1, 1913 or the date when property or improvements were acquired to the date of sale. For this purpose the fair market value on March 1, 1913 of the building on the Falmouth Hotel property was $139,700." [Italics added.] This can only mean that depreciation of 2 per cent per annum of $139,700 was allowed from March 1, 1913 through August 1, 1916, and that no more was allowable for that period. [1] The stipulation accordingly requires the finding that no part of the building reverted to the lessors upon the termination of the leases, [2] for if any part had, petitioner would have been allowed to recover its entire basis of such part over the 3 1/2-year duration of the leases. Dorothy Caruso, 23 T.C. 836; G. S. Stewart Co., 2 B.T.A. 1016. And, hence, allowable depreciation would have been about 30 per cent, substantially in excess of 2 per cent, per annum. Petitioner thus never having lost title to any part of the building, it furthermore cannot be said that any portion of the price paid to the lessors in 1919-1920 was attributable *93 to anything other than the land acquired. Neither party has allocated the March 1, 1913 fair market value of the whole building to the portion erected on petitioner's land and to that erected on the leased land. The only evidence before us upon which such an allocation might be based is the assessed valuations which were stipulated as having been made by the city of Portland in 1913 and 1920. In the view we have taken, however, no such allocation becomes necessary. Depreciation on the stipulated value of the building at the agreed rate of 2 per cent per annum was allowed during the period March 1, 1913 to August 1, 1916 and, not being less than the amount allowable, is the proper adjustment to basis for depreciation for that period. Decision will be entered under Rule 50. Footnotes
1. "THE COURT: * * * the effect of this would be to say that you have taken at least as much depreciation as you are entitled to." (Tr., p. 13.) ↩
2. Even absent the stipulation there would still remain the question whether respondent had borne the burden of proof imposed on him with respect to the increased deficiencies claimed.↩