Petersburg Television Corporation v. Commissioner.
Petersburg Television Corp. v. Commissioner
Docket No. 79074.
United States Tax Court
T.C. Memo 1961-49; 1961 Tax Ct. Memo LEXIS 295; 20 T.C.M. (CCH) 271; T.C.M. (RIA) 61049; February 27, 1961
*295 Held, respondent did not err in disallowing $88,609.54 of the net operating loss deduction of $195,506.11 claimed in petitioner's return for the fiscal year ending August 31, 1956, as a net operating loss carryover from the fiscal year ending August 31, 1955. Held, further, respondent did not err in disallowing a part of the amounts claimed for amortization of leasehold improvements and organization expenses in the fiscal years ending August 31, 1956, and 1957. Robert R. Daly, Esq., 11 Commerce St., Newark, N.J., for the petitioner. Mark H. Berliant, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion *296 ARUNDELL, Judge: Respondent determined deficiencies in income tax for the taxable years ending August 31, 1956, and August 31, 1957, in the amounts of $51,777.28 and $1,679.08, respectively. The errors assigned by petitioner are as follows: With Respect to the Fiscal Year Ended August 31, 1956 A. The Commissioner erred in disallowing $88,609.54 of the net operating loss deduction of $195,506.11 claimed for net operating loss carry-over from the fiscal year ended August 31, 1955. The expenses in question included salaries, travel expenses, professional and legal services, and the error is in finding that such expenses were capital expenditures and not deductible. B. The Commissioner erred in disallowing $594.96 for fees and printing costs, considering them to be non-amortizable organization expenses. C. The Commissioner erred in disallowing $10,367.19 of *297 leasehold expenses on the ground that they were excessive. With Respect to the Fiscal Year Ended August 31, 1957 A. The Commissioner erred in disallowing $594.96 as a non-amortizable organization expense. B. The Commissioner erred in disallowing $2,221.33 of the amount claimed for amortization of leasehold expenses on the ground that they were excessive. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner was incorporated under Virginia law on September 8, 1953, with its principal office in Petersburg, Virginia. It filed its returns for the periods here involved with the director of internal revenue at Richmond, Virginia. Its authorized capital stock consisted of 75,000 shares of common stock of the par value of $10 per share. The organizers of petitioner filed an application with the Federal Communications Commission (hereinafter referred to as FCC) for a television construction permit. In accordance with FCC procedure, a hearing on the application was held before an FCC examiner. On September 29, 1954, the FCC granted petitioner's application for a construction permit. Pursuant to the FCC's granting of petitioner's *298 application for a construction permit, petitioner commenced construction of its television broadcast facility. Thereafter, petitioner received a special temporary authorization to operate its television station on a commercial basis. Broadcasting commenced on August 15, 1955. The original grant of permit by the FCC on September 29, 1954, was the subject of opposing litigation by the unsuccessful applicant. The following is the history of the appeals taken before the FCC and the Federal courts with respect to the original construction permit granted petitioner on September 29, 1954: Construction Permit Issued
Sept. 29, 1954
Petition for Rehearing
Oct. 29, 1954
Petition Denied
Dec. 23, 1954
Appeal
Jan. 20, 1955
Petition for Stay
Feb. 8, 1955
Petition Denied
Feb. 25, 1955
Program Authorization
Aug. 15, 1955
Court of Appeals - Affirmed
Dec. 29, 1955
Petition for Certiorari
Feb. 10, 1956
Petition Denied
Mar. 26, 1956
License Issued
Dec. 31, 1956
The FCC will not grant a license upon application when the decision of the FCC with respect to the construction permit is the subject of litigation. At the time of incorporation (September 8, 1953) Galleher *299 & Company, Inc., an underwriter, issued a "Prospectus" offering to sell to United States citizens residing in Virginia 24,750 shares of common stock ( $10 par) of petitioner at $10.75 per share. An additional 20,250 shares was to be issued to Lee Broadcasting Corporation (hereinafter referred to as Lee) of Richmond, Virginia, at a price of $10 per share. At that time Lee was operating Radio Station WLEE, AM and FM, in Richmond. All subscriptions were to be received by the underwriter not later than September 17, 1953. The prospectus provided that all funds accompanying the subscriptions would be deposited by petitioner in a bank awaiting final disposition of the application to the FCC for the construction permit; that if the construction permit were granted to petitioner and no appeal from such grant was or could be taken, such funds would become subject to withdrawal by petitioner; and that if the application for the construction permit was withdrawn or denied, and no appeal was or could be taken from such denial, then all subscription funds would be returned to the subscribers and the "expenses incurred" by petitioner would "be borne and paid by Lee." The prospectus further provided: *300 The Television corporation [petitioner] was incorporated under Virginia law on September 8, 1953. Organization of the Television Corporation was caused by a group of individuals residing in Petersburg and who acted in conjunction with Lee which has on file with the Federal Communications Commission an application for a permit to construct a VHF [very high frequency] television station on Channel 8 in Petersburg. Upon organization of Television Corporation, Lee agreed to withdraw its application to the Federal Communications Commission in favor of the application to be filed by Television Corporation. The prospectus also provided that the legality of the common stock of petitioner was being passed on by Alexander Hamilton and Benjamin T. Kinsey, Jr., counsel for petitioner; by Williams, Mullen, Pollard & Rogers, counsel for Lee; and by Hunton, Williams, Anderson, Gay & Moore, counsel for the underwriter. The first bank account of petitioner was opened in the Citizen's National Bank of Petersburg, Virginia, on September 18, 1953, with a deposit of $1,105. No withdrawals were made and no further deposits were made in said account until April 22, 1955. On that date, deposits *301 were made from the sale of stock, and withdrawals, for the first time, were thereafter made. By June 1955, $675,927.70 had been deposited in the account from the sale of stock. Among the withdrawals from the account were four checks to Lee to reimburse it for the moneys that it had previously expended on behalf of petitioner, totaling $105,345.57, as evidenced by the four checks bearing the following dates and the following amounts: May 9, 1955
$25,718.00
May 16, 1955
56,256.11
June 7, 1955
6,939.32
July 19, 1955
16,432.14
Petitioner has at all times been on an accrual basis of accounting. James P. Erny is a certified public accountant, licensed and practicing in the State of Virginia. Erny set up petitioner's books and records, supervised its accounting procedures, and prepared its financial statements and tax returns, following a date early in 1955. On or about February 28, 1955, a U.S. corporation income tax return, Form 1120, was filed for petitioner for the period September 8, 1953, to August 31, 1954. No income or deductions were reported on this return. Petitioner stated its principal business activity as "Inactive." Its balance sheet as of August 31, 1954 (Schedule *302 L of the return) showed total assets $30 (notes and accounts receivable) and total liabilities $30 (3 shares of common stock). This return was not prepared by Erny. On or about November 15, 1955, a U.S. corporation income tax return, Form 1120, was filed for petitioner for the fiscal year ending August 31, 1955. This return was prepared by Erny. It showed: Total income
$ 44,827.64
Total deductions
239,946.25
Loss
$195,118.61 On this return petitioner stated its principal business activity as "Television Broadcasting." Its balance sheet as of August 31, 1955 (Schedule L of the return) showed total assets of $906,022.40 and a like amount of total liabilities and capital. Included in the total assets were intangible assets (organization expense) of $3,907.35, less amortization of $65.12. Also included in the total assets was non-amortizable organization expense of $35,433.90 (included in the balance sheet under the heading of "Other assets $40,590.93"). This $35,433.90 was set up by Erny and consisted approximately of $22,000 paid to the underwriter and $12,000 paid to Hunton, Williams, Anderson, Gay & Moore, counsel for the underwriter, in connection with the issuance *303 of the stock. No part of the $35,433.90 was for fees in securing the construction permit or license. Early in 1956 Erny advised petitioner's president to seek an immediate audit by the Internal Revenue Service of petitioner's income tax return for the fiscal year ended August 31, 1955, its first year of actual operation, prior to issuance of the first financial statement to shareholders. Petitioner sent a letter dated March 19, 1956, to the district director of internal revenue, the body of which is as follows: This is a new corporation that had for the year ended August 31, 1955 its first year of operation. Since the stock of this corporation is widely held, a statement should be sent to the stockholders soon as to its status. Because it is a new corporation, our auditors hesitate to issue such a statement until it has been determined whether or not there is any income tax liability contingently due. It, therefore, appears imperative that we have an immediate audit of the Form 1120 filed by this corporation for the fiscal year ended August 31, 1955. For the reasons stated above, we respectfully request that an Agent be assigned for the purpose of such an audit at once. *304 Internal revenue agent Albert M. Kinker was assigned petitioner's return for the fiscal year ended August 31, 1955. The audit was conducted for about a week during August or September 1956 at petitioner's office. Erny was requested by petitioner to work with Kinker during the course of the investigation. Erny assisted Kinker in locating data, answering questions, and introducing various persons. Kinker questioned the deductibility of a large number of the items making up the total deductions of $239,946.25 claimed on the return but did not make any specific adjustment of such questioned items for the reason that any changes that might have been made by him would not have served to show any taxable income for the fiscal year ending August 31, 1955. Kinker, however, advised Erny that if the net operating loss were carried forward to a subsequent year, at least a part of it would be disallowed on the ground that certain items claimed as expense deductions in the return for fiscal 1955 were not allowable as such on the ground that they should have been capitalized. In his report dated September 21, 1956, Kinker stated in part: Although no adjustments could be made in the year involved, *305 there are several items which should be considered when the loss is carried forward to FY 9/1/55-8/31/56. These have been discussed with Mr. Erny, who is the accountant for the corporation. They are as follows: * * *
2. Consideration should be given to the possibility of treating expenditures paid by the Lee Broadcasting Corp., but reimbursed by the Petersburg Television Corporation as organization expense. Reason: Although the corporation was not chartered until September 8, 1953, there were expenses incurred by the present officers of the corporation prior to that time in trying to get permission from the Federal Communications Commission to establish a television station. This embryo of the corporation was financed by Lee Broadcasting Corp., Richmond, Va., starting in May 1952 until the corporation was chartered September 8, 1953. They continued financing Petersburg Television Corp. from September 8, 1953 until July 9, 1955, which was about a month prior to the time that they went on the air and after stock had been sold which gave them some operating capital. * * * On October 2, 1956, the district director of internal revenue mailed a form letter to petitioner in regard *306 to its income tax return for the fiscal year ending August 31, 1955, the body of which is as follows: Our recent examination of your tax liability for the (years) indicated above discloses that no change is necessary to the tax reported. Accordingly, the (returns) will be accepted as filed. I want to compliment you on the care which you have shown in the preparation of your (returns). On November 15, 1956, petitioner's president sent to each of petitioner's stockholders a balance sheet of petitioner as of August 31, 1956, and a statement of income of petitioner for the fiscal year ending August 31, 1956, together with an opinion from Erny stating in part "In my opinion, the accompanying balance sheet and statement of income present fairly the financial position" of petitioner at August 31, 1956. This balance sheet and the statement of income both gave effect to the claimed operating loss for fiscal 1955 of over $195,000 as if it were an entirely allowable operating loss. On or about November 12, 1956, a U.S. corporation income tax return, Form 1120, was filed for petitioner for the fiscal year ending August 31, 1956. This return was prepared by Erny. On line 33 of this return, *307 petitioner deducted a net operating loss deduction of $195,506.11. In his deficiency notice the respondent disallowed $88,609.54 of the claimed net operating loss deduction and in a statement attached thereto explained the adjustment as follows: (a) The net operating loss deduction of $195,506.11 claimed for net operating loss carryover from the fiscal year ended August 31, 1955 has been disallowed to the extent of $88,609.54. For details, see Exhibit A. Exhibit A, referred to in the above explanation, is as follows: Reduction of
Reduction of
Reduction of
N.O.L. Carryover
Expense
Expense
Expenses Incurred Prior to 9/30/54
from 8/31/54 *
8/31/56
8/31/57
Salaries
$30,300.67
Travel Expense
9,669.92
Professional Services
12,386.38
Legal
33,777.56
Miscellaneous Expense
90.00
Television Application
124.38
Surveys
600.00
Franchise Fees
225.00
(1)
$87,173.91
(2) Amortization of Leasehold Improvements
(Per Exhibit B)
$ 1,413.93
$10,367.19
$ 2,221.33
(3) Amortization of Organization Expense
(Per Exhibit C)
9.20
594.96
594.96
(4) Depreciation - Automation (Per Exhibit D)
12.50
6.62
(5) Travel, Entertainment and Employee Re-
location (Per Schedule 3-A)
500.00
(6) Long Term Capital Gain (Per Exhibit D)
(93.91)
Total
$88,609.54
$10,962.15
$ 3,229.00
Total reduction of Net Operating Loss Carry-
Over to FY 8/31/56
88,609.54
Total Increase in Travel Income
0
$99,571.69
$ 3,229.00
*308 The first item in Exhibit A above represented $30,300.67 of compensation paid to four individuals as follows: Irvin G. Abeloff, vice president
and managing director of peti-
tioner
$ 9,800.00
James L. Dodd, Jr., assistant sec-
retary of petitioner
15,461.88
Dodd's secretary
578.79
W. N. Stoneman
4,460.00
Total
$30,300.67
The liability for the said compensation of $30,300.67 was incurred on behalf of petitioner between March 1952 and September 30, 1954, and was paid by Lee who, later in 1955, was reimbursed by petitioner. The second item in Exhibit A above, in the amount of $9,669.92, related to expenses incurred in traveling and expenditures made on trips, all of which were incurred prior to September 29, 1954, the date petitioner's application for a construction permit was granted. The third item, in the amount of $12,386.38, relates to professional engineering services rendered to petitioner prior to September 29, 1954, and was incurred in connection with petitioner's application for a construction permit. The fourth item of Exhibit A, in the amount of $33,777.56, relates to *309 legal services rendered to petitioner prior to September 30, 1954. Most of this amount, namely, $33,434.56, was paid to the firm of Arnold, Fortis & Forter in connection with petitioner's application for a construction permit. The next four items of Exhibit A, totaling $1,039.38, represented expenses incurred prior to September 30, 1954, in connection with petitioner's application for a construction permit. Facts Relating to Amortization of Leasehold Improvements On February 1, 1955, petitioner leased a certain lot or parcel of land, with the improvements thereon, in Petersburg, Virginia, for a term of 2 years at a monthly rental of $275. On April 14, 1955, the lessors of this lease, in consideration of certain improvements to the leased premises to be made by petitioner, granted petitioner the right and option to renew the lease for a 3-year term beginning on February 1, 1957, at a monthly rental of $300, provided petitioner gave written notice to the lessors of its intention to exercise the option at least 90 days prior to January 31, 1957. On October 12, 1956, petitioner exercised the option to renew. Petitioner expended at different times between May 31, 1955, and September 30, 1956, a *310 total of $25,487.21 on improvements to the leased property. Petitioner, in its returns for the fiscal years 1955, 1956, and 1957, claimed deductions for amortization of these improvements on the basis of the original 2-year lease. The respondent determined that the improvements should be amortized over a period of 5 years. The amortization claimed by petitioner, allowed by the respondent, and disallowed by the respondent, is as follows: F.Y.
F.Y.
F.Y.
8/31/55
8/31/56
8/31/57
Claimed by peti-
tioner
$2,191.02
$15,283.74
$8,012.45
Allowed by re-
spondent
777.09
4,916.55
5,791.12
Disallowed by re-
spondent
$1,413.93
$10,367.19
$2,221.33
Facts Relating to Amortization of Organization Expenses Petitioner capitalized $3,907.35 of organizational expenses on an amortizable basis. The respondent determined that of this amount $2,975.45 was incurred prior to September 30, 1954, and was non-amortizable. The amortization of organization expense claimed by petitioner, allowed by the respondent, and disallowed by the respondent, is as follows: F.Y.
F.Y.
F.Y.
8/31/55
8/31/56
8/31/57
Claimed by petitioner
$65.12
$781.44
$781.44
Allowed by respondent
55.92
186.48
186.48
Disallowed by re-
spondent
$ 9.20
$594.96
$594.96
*311 Ultimate Facts Petitioner began business activity in the fiscal year ended August 31, 1955. The net operating loss carry-forward of $195,506.11 from the fiscal year ended August 31, 1955, is not allowable in the fiscal year ended August 31, 1956, to the extent of $88,609.54. Respondent is not estopped or barred by any election relative to adjusting petitioner's claimed net operating loss carry-forward from the fiscal year ended August 31, 1955. Leasehold expenses incurred by petitioner are amortizable over a 5-year period. Opinion Petitioner strongly contends that because of the facts and surrounding circumstances relating to the examination of its income tax return for the fiscal year ending August 31, 1955, particularly the mailing by the respondent to petitioner of the form letter dated October 2, 1956, advising petitioner that "no change is necessary to the tax reported" and that accordingly the return for the fiscal year ending August 31, 1955, "will be accepted as filed," the respondent is now bound by an election in the matter and is estopped from disallowing any portion of the net operating loss deduction of $195,506.11 as a carryover from the fiscal year ending *312 August 31, 1955, claimed on line 33 of petitioner's income tax return for the fiscal year ending August 31, 1956. If petitioner is correct in this contention, by far the greater portion of the deficiency for the fiscal year 1956 is eliminated. At the outset it is our opinion that no factual basis has been established for election or estoppel in this case. Petitioner's letter to the district director, dated March 19, 1956, referred only to the "year ended August 31, 1955 its first year of operation." It did not refer in any way to fiscal 1956, as the end of that year was not until August 31, 1956. Petitioner wanted to know if "there is any income tax liability contingently due" for the fiscal year ending in 1955 and it, therefore, requested "that we have an immediate audit of the Form 1120 filed by this corporation for the fiscal year ended August 31, 1955." The district director directed Kinker to make the requested audit and petitioner engaged Erny, who had prepared the return for petitioner, to work with Kinker during the course of the investigation, which lasted about a week. Kinker advised Erny that there were many items claimed on the fiscal 1955 return as expense deductions *313 which should have been capitalized but that the total amount of such items would not be sufficient to overcome the large loss of over $195,000 claimed on the return, so that, in any event, there could be no tax due for fiscal 1955. Kinker, however, advised Erny that if the net operating loss shown on the return for fiscal 1955 were carried forward to a subsequent year, these items that should have been capitalized would then be disallowed as a net loss carry-over deduction. As a result of this examination, the district director then mailed to petitioner the form letter dated October 2, 1956, the body of which appears in our findings. On the basis of these facts we hold there is no merit in the above contention. In order to constitute equitable estoppel, there must be, inter alia, a false representation or wrongful, misleading silence relied on by the party claiming estoppel and the error must originate in a statement of fact and not in an opinion or a statement of law. Harry Ginsberg, 24 T.C. 273; United States v. Scott & Sons, 69 F. 2d 728 (C.A. 1, 1934); Estate of George Kingdon, 9 T.C. 838, 844. These essential elements of an equitable estoppel *314 are not present in the instant case. The respondent at no time gave petitioner any assurance that the net operating loss for fiscal 1955, if carried forward to fiscal 1956, would be allowed in full. We, therefore, hold for the respondent on this issue. Cf. Automobile Club of Michigan, 353 U.S. 180; Guenzel's Estate v. Commissioner, 258 F. 2d 248 (C.A. 8, 1958), affirming 28 T.C. 59; Estate of William Steele, 34 B.T.A. 173, 176; Tide Water Oil Co., 29 B.T.A. 1208, 1224. Petitioner also contends that, aside from the estoppel feature, the respondent erred in any event in disallowing $88,609.54 of the $195,506.11 net operating loss deduction claimed in petitioner's return for the fiscal year ending August 31, 1956, which disallowance was based on respondent's finding that the items disallowed should be capitalized and not expensed. The details of the $88,609.54 are set forth in Exhibit A of the statement attached to the deficiency notice and appear in our findings and may be summarized thus: Expenses incurred prior to 9-30-54
$87,173.91
Amortization of leasehold im-
provements
1,413.93
Amortization of organization ex-
pense
9.20
Depreciation - automation
12.50
Total
$88,609.54
*315 The expenses incurred prior to September 30, 1954, in the amount of $87,173.91 are detailed in Exhibit A as follows: Salaries
$30,300.67
Travel Expense
9,669.92
Professional Services
12,386.38
Legal
$33,777.56
Miscellaneous Expense
90.00
Television Application
124.38
Surveys
600.00
Franchise Fees
225.00
$87,173.91
Salaries and travel expense in the amounts of $30,300.67 and $9,669.92, respectively, were incurred prior to the time petitioner began business operations. The respondent determined and contends that as such they were not ordinary and necessary expenses "in carrying on any trade or business" as that phrase is used in section 162(a), I.R.C. 1954. [1]
In Eugene H. Walet, Jr., 31 T.C. 461, affirmed per curiam, 272 F. 2d 694 (C.A. 5), we said, at page 471: Expenditures made in investigating a potential new trade or business and preparatory to entering therein are *316 not deductible under section 23(a)(1)(A) since they are not incurred in carrying on such trade or business. George C. Westervelt, 8 T.C. 1248; Morton Frank, 20 T.C. 511; Frank B. Polachck, 22 T.C. 858; J. W. York, 29 T.C. 520. See also Mid-State Products Co., 21 T.C. 696, wherein we held that certain expenditures for salaries and compensation for services, travel expenses, telephone, telegraph, office supplies, automobile expense, and the like were incurred by the taxpayer in the course of exploring, acquainting itself and preparing itself for a new business venture and were therefore in the nature of non-amortizable capital expenditures and were not deductible as expenses incurred in the carrying on of a trade or business. Petitioner attempts to escape the application of the above-cited cases by contending that since Lee actually paid these expenses originally and was reimbursed by petitioner in 1955, the expenses should be regarded as having been "incurred" by petitioner after September 29, 1954, instead of prior thereto as determined by the respondent. We see no merit in this contention. The fact that Lee may *317 have paid the expenses originally would not change the character of the expenses from pre-business to post-business. It was stipulated that the moneys expended by Lee were "expended on behalf" of the petitioner and that "Petitioner has at all times been on the accrual basis of accounting." We hold that expenses for salaries and travel in the amounts of $30,300.67 and $9,669.92, respectively, were pre-business expenses and were not deductible as expenses incurred in the carrying on of a trade or business. Eugene H. Walet, Jr., supra; Mid-State Products Co., supra. The respondent was, therefore, correct in disallowing the net operating loss deduction to that extent. Professional (engineering) and legal services in the amounts of $12,386.38 and $33,777.56, respectively, were incurred in connection with petitioner's application for a construction permit and, as such, should be capitalized under our holding in Radio Station WBIR, Inc., 31 T.C. 803; KWTX Broadcasting Co., 31 T.C. 952, affirmed per curiam, 272 F. 2d 406 (C.A. 5); and World Publishing Co., 35 T.C. 7 (Oct. 7, 1960). We also sustain the respondent's *318 determination in disallowing the net operating loss deduction to the extent of the items for miscellaneous expense, $90; television application, $124.38; surveys, $600 and franchise fees, $225. No evidence was offered as to these four items except that the parties did stipulate that the $90 "relates to miscellaneous expenses incurred by petitioner" and that the breakdown was for advertising property for rezoning, T.V. directory, subcription to Progress Index and two petty cash items of $25 each. We see nothing in that stipulation that shows error on the part of the respondent. The next item in Exhibit A of the statement attached to the notice of deficiency is amortization of leasehold improvements. This not only involves the net operating loss deduction feature but concerns assignment of error C for fiscal 1956 and assignment of error B for fiscal 1957. The only question here is whether the leasehold improvements in the amount of $25,487.21 should be amortized over the 2-year term of the original lease, as contended for by petitioner, or over a 5-year period by reason of the exercise by petitioner of the option to renew for an additional period of 3 years. There is no evidence that *319 the life of the improvements was less than 5 years. We sustain the respondent's determination that the improvements should be amortized over the 5-year period. Alamo Broadcasting Co., 15 T.C. 534, 542; Jos. N. Neel Co., 22 T.C. 1083; Dorothy Caruso, 23 T.C. 836, 839. The final item in Exhibit A of the statement attached to the notice of deficiency to be considered [2] is amortization of organization expense. This not only involves the net operating loss deduction feature but concerns assignment of error B for fiscal 1956 and assignment of error A for fiscal 1957. Organizational expenditures are deductible to a limited extent under section 248, I.R.C. 1954. [3] This provision is new in the 1954 Code. [4]Section 248(c) provides that "The election shall apply only with respect to expenditures paid or incurred on or after the date of enactment of this title" which was *320 August 16, 1954. The respondent determined that $2,975.45 of the $3,907.35 capitalized by petitioner was incurred prior to September 30, 1954. Petitioner has not shown that any portion of the $2,975.45 was incurred on or after August 16, 1954. Section 1.248(b)(3) of the Regulations provides in part: (3) The following expenditures are not organizational expenditures within the meaning of section 248 and this section: (i) Expenditures connected with issuing or selling shares of stock or other securities, such as commissions, professional fees, and printing costs. * * * *321 The above-mentioned $2,975.45 consisted of $2,698.95 paid to Williams, Mullen, Pollard & Rogers, mentioned in the prospectus as one of the firms that passed on the legality of petitioner's common stock; and $276.50 paid to the Lewis Printing Company, apparently for printing costs. Petitioner has offered no proof which would in any way show error on the part of the respondent as to this issue. We, therefore, sustain the respondent's determination. Decision will be entered for the respondent. Footnotes
*. Note: "8/31/54" in the first column should read: "8/31/55."↩
1. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *↩
2. Petitioner has apparently conceded the depreciation item in Exhibit A wherein the net operating loss deduction claimed was disallowed to the extent of $12.50, and no error is assigned regarding the last three items shown on Exhibit A for fiscal 1957.↩
3. SEC. 248. ORGANIZATIONAL EXPENDITURES. (a) Election to Amortize. - The organizational expenditures of a corporation may, at the election of the corporation (made in accordance with regulations prescribed by the Secretary or his delegate), be treated as deferred expenses. In computing taxable income, such deferred expenses shall be allowed as a deduction ratably over such period of not less than 60 months as may be selected by the corporation (beginning with the month in which the corporation begins business). (b) Organizational Expenditures Defined. - The term "organizational expenditures" means any expenditure which - (1) is incident to the creation of the corporation; (2) is chargeable to capital account; and (3) is of a character which, if expended incident to the creation of a corporation having a limited life, would be amortizable over such life. (c) Time for and Scope of Election. - * * * The election shall apply only with respect to expenditures paid or incurred on or after the date of enactment of this title. ↩
4. See H. Rept. No. 1337, 83d Cong., 2d Sess., A64; S. Rept.no. 1622, 83d Cong., 2d Sess., p. 224; sec. 1.248, Income Tax Regulations↩ under the Internal Revenue Code of 1954, issued June-December, 1956, Publication No. 329-2, pp. 201-202.