**RICHMOND TELEVISION CORPORATION, Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 9531.**

United States Court of Appeals Fourth Circuit.

Argued Nov. 6, 1964.

Decided April 16, 1965.

Rehearing Denied May 25, 1965.

---

Fred R. Becker, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Department of Justice, C. Vernon Spratley, Jr., U. S. Atty. and Samuel W. Phillips, Asst. U. S. Atty., on brief), for appellant.

Robert T. Barton, Jr., and Horace D. McCowan, Jr., Richmond, Va. (Christian, Barton, Parker, Epps and Brent, Richmond, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, and BRYAN and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge:

The taxpayer, Richmond Television Corporation, owns and operates a television station which broadcasts over Channel 12 in Richmond, Virginia. In February, 1963, it brought suit in the United States District Court for the Eastern District of Virginia, seeking a refund of $21,378.27 in income taxes which it paid after the Commissioner of Internal Revenue disallowed $35,129.19 of the deductions claimed on its tax returns for 1956 and 1957.[1] Its theory is that the amounts in question are deductible as "ordinary and necessary expenses of commencing Plaintiff's business and/or of managing, conserving and maintaining property held for production of income." It claims in the alternative that, if the total amounts are not deductible as expense items, it is entitled to "amortize them over the life of the construction permit plus the life of its first regular license from the Federal Communications Commission (FCC)."

The Judge submitted the case to the jury on special interrogatories which asked whether these were ordinary and necessary business expenses and, if so, in what amount. The jury was also asked whether the television broadcasting license has a useful life of limited or indefinite duration and, if the former, of what duration. The jury found its verdict for the taxpayer, answering that the entire $53,129.19 was an ordinary and necessary business expense and that the license had a useful life of three years. The United States moved for judgment n. o. v. and, in the alternative, for a new trial. Both motions were denied.

The Government has appealed, urging that the taxpayer is entitled to no deduction for the amount in question or any part of it. It contends first that these were capital expenditures as a matter of law, and that the District Court erred in submitting to the jury the issue of whether these were ordinary and necessary business expenses. The second contention of the Government is that there is no evidence to support the jury's finding that these were capital assets having a definite duration.

I

The taxpayer was organized in 1952, and among its stated corporate purposes was the operation of a television station. On December 22, 1952, it submitted an application to the FCC for a construction permit to operate Channel 12. There were at the time two other applicants competing for the license, Larus Brothers & Company (Larus), the owner and operator of radio station WRVA in Richmond, and Richmond Newspapers, Inc.

Larus had submitted its application for the Channel 12 license as early as 1948. In anticipation of success, it designated Samuel S. Carey, a member of its radio station staff to conduct a training program so that if it obtained the license it would have immediately available a trained staff capable of operating a television broadcasting station enabling it to produce income at an early stage.

The training program, organized in the 1948–1949 period, attained full scope during 1951 and 1952. Approximately fifty persons were under training by Carey, twenty-six of them full-time employees of WRVA, Larus' radio station. Twenty were part-time students in local area schools who received no compensation from WRVA. Some members of this group, however, later went to work for the taxpayer. During the training program, Larus purchased equipment and films and set up the beginnings of a television broadcasting studio.

On November 23, 1953, Larus and Richmond Television entered into an agreement described as a merger,[2] which

1. The taxpayer deducted this amount on its 1956 and 1957 income tax returns on account of its claimed right to carry over net operating losses from the taxable years 1953 through 1955. The right to these 1956 and 1957 deductions thus depends on the deductibility of the expenditures in the taxable years 1953 through 1955, the years in which they were originally claimed.

2. Although thus referred to at the trial, the agreement was not a merger in a

embodied the following provisions: Larus would dismiss its pending application for a television construction permit, leaving the taxpayer's application unopposed except by Richmond Newspapers, Inc., not deemed a serious contender. Larus subscribed to 4500 shares of Richmond Television's common stock, which was sixty percent of its maximum authorized voting stock, at $100 per share or the total price of $450,000, and it promised to subscribe at a later date to $450,000 worth of capital notes of Richmond Television. The parties agreed that representation on Richmond Television's Board of Directors would be proportional to their stock ownership, thereby assuring Larus of control.

Pursuant to the November, 1953, agreement, Richmond Television also paid Larus $25,799.19 as reimbursement for costs previously incurred in the training program. This amount is described on the tax return as payment for "Retention personnel—per agreement," and is part of the $53,129.19 which Richmond Television claims it is entitled to deduct as an ordinary and necessary business expense. Following the agreement, Larus continued the training program for the benefit and convenience of Richmond Television. Larus' trainees remained on its payroll, and under the terms of the "Personnel Retention Agreement," Richmond Television reimbursed Larus for the additional $27,330 expense it incurred thereafter in the training of personnel. This arrangement continued until Richmond Television began broadcasting.

The FCC granted the construction permit on November 30, 1955, and in 1956 it issued a three-year license to the taxpayer which then commenced broadcasting.

Although Richmond Television had no receipts from television broadcasting prior to 1956, it undertook, in its original returns for 1952 through 1956, to claim deductions in the aggregate sum of $114,708 for the cost of the training program as well as the cost of obtaining an operating license from the FCC. In 1956, however, after the Internal Revenue Service issued Revenue Ruling 56–520, holding that certain costs incurred in obtaining a television broadcasting license from the FCC were not deductible from gross income, the taxpayer voluntarily capitalized $58,165.79 of the sum previously deducted for its expenses in obtaining the license from the FCC. The remaining $56,552.01 it continued to treat as deductible. Of that amount, the Internal Revenue Service later allowed $3,422.-82, and disallowed $53,129.19, the cost of the training program, both before and after the November, 1953, agreement. These are the items here in dispute.

## II

For reasons to be stated, we hold that the taxpayer is not entitled to the claimed refund.

Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 162(a) (1955), provides:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *."

To qualify under this section, expenses must be (a) incurred in carrying on a trade or business, (b) ordinary and necessary, and (c) paid or incurred within the taxable year.[3] The Government concedes that the expenses in question were ordinary and necessary, and it does not suggest that the expenses were incurred in taxable years other than those claimed. It is the Government's position, however, that as a matter of law the sums expended

---

strict legal sense, since Richmond's corporate existence was unaffected and there was no sale to Larus of Richmond's assets. There is no merger merely because one corporation acquires control over another through majority ownership of its stock. General Finance Corporation v. Keystone Credit Corp., 50 F.2d 872 (4th Cir. 1931); 15 Fletcher, Cyclopedia of Corporations (1961 Revised Edition) § 7046, at n. 80.

3. Hill v. Commissioner of Internal Revenue, 181 F.2d 906, 908 (4th Cir. 1950); Mertens, Law of Federal Income Taxation, Code Commentary Volume, p. 152.

by the taxpayer in training prospective employees in the techniques of television broadcasting in years prior to receipt of its FCC broadcasting license are not ordinary business expenses but capital expenditures. The argument is that the District Court erred in failing to rule as a matter of law that the taxpayer was not "carrying on any trade or business" during the taxable years, and hence is not entitled to a deduction under section 162(a).

The taxpayer maintains that these were "ordinary and necessary start-up expenses," and asserts that no case or ruling has ever denied a deduction for such expenses. The taxpayer, however, fails to deal with the point that to qualify for the deduction the expenses must have been incurred in "carrying on * * * [a] trade or business."

The precise question is the deductibility of "pre-opening" expenses incurred between the decision to establish a business and the actual beginning of business operations.[4] During the three-year period under consideration, Richmond Television had indeed been incorporated for the purpose of conducting a television station but it had not yet obtained a license or begun broadcasting. The issue therefore is at what point of time did its business begin, and whether at this doubtful, prefatory stage it was carrying on a business. While decisions are to be found holding that particular taxpayers were or were not engaged in a trade or business, there is little discussion of the question of when, in point of time, a trade or business actually begins. This is usually a factual issue, but the resolution of the issue must have an evidentiary basis. It is therefore helpful to turn to several cases presenting analogous circumstances. While these did not formally articulate a general rule, the manner in which the facts in those cases were treated may furnish a guide.

In Frank B. Polachek v. Commissioner of Internal Revenue, 22 T.C. 858 (1954), the taxpayer during the latter part of 1947 devoted his time to planning a new business investment advisory service. The business was never formally organized, but the taxpayer spent $544 for advertising, travelling expenses, secretarial help, printing, mailing, etc. In 1948, the taxpayer abandoned the project. The Tax Court found as a fact that

"the expenses incurred in planning and organizing of petitioner's proposed investment advisory service were not incurred in carrying on a trade or business,"

and held that the expenses were not deductible in 1947 as trade or business expenses.

"The petitioner had no business in 1947. At most, * * * he merely had plans for a potential business * * *. Regardless of the time he may have devoted to the project, or the expense in attempting to attract associates and capital and solicit prospective clients, we think that petitioner's idea was still in its formative stages when it was finally abandoned."

The same principle was applied in Radio Station WBIR v. Commissioner of Internal Revenue, 31 T.C. 803 (1959). Taxpayer, an AM-FM radio station in operation since the early 1940's, applied to the FCC in 1951 for a television station construction permit. The permit was granted in 1955, and the taxpayer began broadcasting in 1956. In its tax returns for 1953 the taxpayer sought to deduct $37,000 it had spent for legal and engi-

---

4. Of course, expenses incurred prior to and for the purpose of reaching a decision whether to establish a business are indisputably capital expenditures. See Westervelt v. Commissioner of Internal Revenue, 8 T.C. 1248 (1947); Frank v. Commissioner of Internal Revenue, 20 T.C. 511 (1953); Mid-State Products v. Commissioner of Internal Revenue, 21 T.C. 696 (1954); and Walet, Jr. v. Commissioner of Internal Revenue, 31 T.C. 461 (1958), aff'd per curiam, 272 F.2d 694 (5th Cir. 1959). See also Fleischer, "The Tax Treatment of Expenses Incurred in Investigation for a Business or Capital Investment," 14 Tax L.Rev. 567 (1959).

neering fees, travel and other expenses of prosecuting its application for the license. The Tax Court held:

"Prior to the taxable year petitioner was engaged in the operation of an AM and an FM radio station. *It was not engaged in the operation of a TV or television station and had no facilities for such an operation.* Consequently the expenses incurred in 1953 for the purpose of acquiring a television construction permit and eventually a television license were not paid or incurred 'in carrying on' a 'trade or business' *in which petitioner was then engaged* so as to make such expenditures deductible as ordinary and necessary business expenses * * * ." (Emphasis supplied.)

Even closer in factual context is KW TX Broadcasting Co. v. Commissioner of Internal Revenue, 31 T.C. 952 (1959), aff'd per curiam, 272 F.2d 406 (5th Cir. 1959). There a radio station incorporated in 1946 incurred certain expenses in the prosecution of its 1954 application for a television license. It paid $8,000 in legal fees for counsel to represent it at the FCC hearing and $4,000 for the travelling expenses of its representatives and witnesses. Significantly, it paid $45,000 additional to reimburse a competitor for its expenses in seeking the license, and received in exchange the promise of the competitor to dismiss its application for the license. The competitor withdrew its application and on December 2, 1955, the taxpayer obtained its license and began broadcasting.

In its 1954 tax return, KWTX sought no deduction for the legal fees and travelling expenses but claimed the $45,000 reimbursement as an expense. The Tax Court held that the payment of the $45,-000 was not an ordinary and necessary expense, but was in the nature of a capital expenditure in connection with the television permit and license which the petitioner was seeking.[5] The court held that the $45,000 expenditure was of the same nature as attorneys' and engineering fees and related expenses, which in WBIR were held to be capital expenditures.

Again, in Petersburg Television Corp. v. Commissioner of Internal Revenue, 20 T.C.M. 271 (1961), the taxpayer was incorporated in 1953 and shortly thereafter it filed an application for a television license. A construction permit was granted on September 29, 1954, and broadcasting began on August 15, 1955. In the tax return for its fiscal year ending on August 31, 1955, taxpayer sought deductions for salary, travel expenses, and professional fees paid in seeking the license. A letter it sent to Internal Revenue Service requesting an audit contained the following:

"This is a new corporation that had for the year ended 1955 its first year of operation."

Judge Arundell found as an ultimate fact that

"petitioner began business activity in the fiscal year ended August 31, 1955,"

and held that $40,000 of taxpayer's expenditures were unallowable "pre-business" expenses since they were "incurred prior to the time petitioner began business operations."

While Cohn, et al. v. United States, 57–1 U.S.T. Cases 9456 (D.C.W.D.Tenn. 1957), aff'd on other grounds 259 F.2d 371 (6th Cir. 1958), did not deal with a television broadcasting station, the case is instructive because of the principle it

---

5. The parties in the case at bar agree that the tax consequences of the $25,000 lump sum reimbursement to Larus and the subsequent payments totalling $27,000 are indistinguishable. Furthermore, the record does not suggest that the $25,000 was paid for some other purpose in addition to reimbursement. To the extent, however, that it may have been in consideration of Larus' promise to withdraw its application, it would constitute a capital expenditure. KWTX, supra; Houston Natural Gas Corp. v. Commissioner of Internal Revenue, 90 F.2d 814, 816 (4th Cir. 1937), cert. denied, 302 U.S. 722, 58 S.Ct. 43, 82 L.Ed. 557 (1937); 4 Mertens, Law of Federal Income Taxation, § 25.37, p. 131.

followed. In December, 1940, taxpayers contracted with the United States to operate several flying schools for the training of pilots for the Army Air Corps. The schools began their operations on March 22, 1941. In preparing for the opening of the schools, taxpayers had spent large sums in training instructors, for legal fees and expenses connected with the negotiation of the lease for the airfield, and in dedication ceremonies. The District Court held that these expenses of opening the schools were non-recurrent capital expenditures, not deductible from income. The proper treatment of such items will be considered in Section V of this opinion.

The uniform [6] teaching of these several cases is that, even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized.[7]

Applying this rule, we are of the view that there was no basis in the evidence for a charge permitting the jury to find that the taxpayer was in business during the period in question. We are of the opinion, therefore, that the District Court was in error in failing to hold as a matter of law that Richmond Television was not in business until 1956, when it obtained the license and began broadcasting. Until then there was no certainty that it would obtain a license, or that it would ever go on the air. Since all of the expenditures underlying the disputed deductions were made before the license was issued and broadcasting commenced, they are "pre-operating expenses," not deductible under section 162(a).

### III

There is yet another and related reason why the $25,000 is not a current business expense. Our system of income taxation attempts to match income and expenses of the taxable year so as to tax only net income. A taxpayer may, therefore, not deduct as a current business expense the full cost of acquiring an asset, tangible or intangible, which benefits the taxpayer for more than one year. The concept has been explained in United States v. Akin, 248 F.2d 742, 744 (10th Cir. 1957).[8]

"[A]n expenditure should be treated as one in the nature of a capital outlay if it brings about the acqui· sition of an asset having a period of useful life in excess of one year, or if it secures a like advantage to the taxpayer which has a life of more than one year."

Here, the $25,000 was paid to acquire a staff already trained by Larus in the techniques and skills of television broadcasting. This was in all regards the acquisition of a capital asset whose value to the taxpayer would continue for many years, even though from time to time individual staff members could be expected to leave its employ. The $25,-

---

6. Southeastern Express Co., 19 B.T.A. 490 (1930), the only authority *contra*, has not been followed or even mentioned in later Tax Court cases.

7. Compare concurring opinion of Mr. Justice Frankfurter, Deputy v. DuPont, 308 U.S. 498, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940), "'* * * carrying on any trade or business,' * * * involves holding one's self out to others as engaged in the selling of goods or services." See also the following cases construing the terms "trade or business" as used in section 174(a) (1), Internal Revenue

Code of 1954, 26 U.S.C.A. § 174(a) (1) (1955), dealing with research and experimental expenses: Koons v. Commissioner of Internal Revenue, 35 T.C. 1092 (1961), "'trade or business' presupposes an existing business with which the taxpayer is directly connected"; Mayrath v. Commissioner of Internal Revenue, 41 T.C. 582 (1964), "'trade or business,' is used in the practical sense of a going trade or business."

8. Relied on in Radio Station WBIR, Inc., 31 T.C. 803, 812–813 (1959).

000 therefore could not be taken as a current expense.

The remaining $27,000 was spent between 1953 and 1955, a period when the taxpayer was nearer in point of time to the commencement of its business operation. Had these same sums been expended after 1956 they might have qualified under section 162. But because the taxpayer was not yet in business when these sums were paid, they were not deductible as expenses of "carrying on any trade or business."

## IV

■ The taxpayer further claims that, apart from any question of its being in trade or business, the expenditures are deductible under section 212 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 212 (1955). That section, however, by its terms is applicable only to individuals, and not to corporate taxpayers.[9] Iowa Southern Utilities Co. v. CIR, 333 F.2d 382, 385 (8th Cir. 1964).

## V

In its amended complaint, taxpayer advances an alternative theory, namely, that if the expenditures for the training program were costs of acquisition of a capital asset, it is entitled to amortize these costs over the life of the asset and to take the depreciation deduction authorized by section 167 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 167 (1955).[10] Not all intangible property, however, qualifies for the section 167 (a) (1) deduction. Treasury Regulation 1.167(a)–3 provides:

"If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * * An intangible asset, the useful life of which is not limited, is not subject to the allowance for depreciation. * * *"

Richmond argues that the $53,000 spent for the training program secured to it an advantage with a useful life coextensive with the combined terms of the FCC construction permit (22 months) and the first regular broadcasting license (3 years). The taxpayer contends that, since the useful life of this asset is of limited duration, its cost may be depreciated.

The United States answers that the jury's finding that the broadcasting license has a useful life of three years' duration is unsupported by the evidence. It maintains that while FCC licenses are issued for three-year periods the license renewal policies of the FCC are such that the taxpayer could safely anticipate renewal for an indefinite period.[11]

■ However, in the view which we take, it is unnecessary to decide whether

9. *"In the case of an individual,* there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year—
   "(1) for the production or collection of income.
   "(2) for the management, conservation, or maintenance of property held for the production of income * * *." (Emphasis supplied.)

10. "§ 167. Depreciation.
   "(a) General rule—There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—
   "(1) of property used in the trade or business * * *."

11. In KWTX, supra, the Commissioner introduced considerable evidence on renewal of television licenses. The Tax Court found as a fact that:
   "In the past a large number of these applications for renewal of television broadcasting licenses has been granted and none ever denied,"
and concluded that:
   "While it is doubtless true that it will be within the power of the F.C.C. to refuse to grant a renewal of petitioner's television license * * * nevertheless we think * * * that it is altogether unlikely that the F.C.C. will deny petitioner's application for a renewal of its license."

a television license is an asset of definite or indefinite duration. Section 167(a)(1) by its terms is applicable only to "property used in the trade or business." Since, as we have shown, Richmond was not in business during the taxable years with which we are concerned, it cannot be said to have used its trained television broadcasting staff in its "business." Hence, it is not entitled to a depreciation deduction for the years for which it is claimed.[12]

This principle is illustrated in Radio Station WBIR v. Commissioner of Internal Revenue, 31 T.C. 803 (1959).[13] There a radio station applied in 1951 for a television station construction permit which was not granted until 1956. It sought to amortize the cost of obtaining the permit and to deduct part of that cost for its 1953 taxable year. The Tax Court denied the deduction, stating:

> "The television license for which the expenditures were made was not in existence in 1953 and had not as yet been granted by the FCC when this case was heard in 1958, due to the pendency of the litigation regarding the construction permit. Under the circumstances, any claim by the petitioner for amortization of the cost of acquiring a television license is premature and it is unnecessary for us to determine whether the useful life of a television license, for depreciation purposes, is limited to the three year period contended for by the petitioner or is indeterminate as argued by the respondent. *In any event it is*

*clear that the petitioner is not entitled to any deduction in 1953 for amortization of the costs of acquiring a television license."* (Emphasis supplied.)

### CONCLUSION

Because Richmond Television was not in business until it obtained its license and began broadcasting operations, the District Court erred in permitting the jury to answer any of the issues pertaining to section 162(a) or section 167(a)(1).

The judgment of the District Court entered upon the jury's findings must therefore be

Reversed and judgment entered for the United States.

### ON PETITION FOR REHEARING

#### PER CURIAM:

In its complaint for a refund of income taxes paid for the years 1956 and 1957, the taxpayer alleged that the Commissioner erroneously disallowed deductions for those years which were claimed as net operating loss carry-overs from the taxable years 1953 through 1955. This court held that the taxpayer was not entitled to the claimed deductions.

On Petition for Rehearing, the taxpayer, for the first time, claims the right to amortization deductions in the years 1956 and 1957 for the same expenses. Since the issue is not properly before us, in denying the petition, we wish to make it clear that we express no opinion as to the right to the newly claimed deductions.

---

12. Treasury Regulation 1.167(a)–10(b), which provides that "[t]he period for depreciation of an asset shall begin when the asset is placed in service," answers the question of when a taxpayer *who is in business* may begin to depreciate an asset. See also Hillcone Steamship Co. v. Commissioner of Internal Revenue, 22 T.C.M. 1096 (1963); Nulex, Inc. v. Commissioner of Internal Revenue, 30 T.C.

769 (1958). These authorities indicate that the taxpayer here is not entitled to the section 167(a)(1) deduction for the further reason that the television staff did not begin to serve Richmond until 1956 when broadcasting began.

13. Discussed supra, p. 905, as to the section 162(a)(1) trade or business expense deduction.