NULEX, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 64777. Filed June 30, 1958.

770

*Henry Ravenel, Esq.*, for the petitioner.
*Joseph N. Ingolia, Esq.*, for the respondent.

The Commissioner determined a deficiency in petitioner's income tax in the amount of $601.89 for the calendar year 1952. The deficiency for 1952 is due to the Commissioner's disallowance of a loss claimed on the sale of a boat which petitioner purchased in 1946 but which was never used because of the inability to secure a charter license. The petitioner claims a deduction for the difference between the purchase price of the boat in 1946 and the selling price in 1952. The respondent reduced the basis of the boat by depreciation allegedly allowable for the period petitioner held it (even though petitioner never claimed depreciation) and determined that petitioner realized a long-term capital gain rather than an ordinary loss on the sale, which petitioner reported on its return.

Other adjustments are not in issue.

FINDINGS OF FACT.

A stipulation of facts has been filed and is incorporated herein by this reference.

Petitioner Nulex, Inc., sometimes hereinafter referred to as Nulex, a Maryland corporation with its principal office in Washington, D. C., filed its Federal income tax return for the calendar year 1952 with the district director of internal revenue at Baltimore, Maryland.

Petitioner was organized under the name of Nulex Oil & Gas, Inc., on February 15, 1943, and its name was changed to Nulex, Inc., on March 15, 1948. The original business of petitioner was to drill oil wells, deal in oil and petroleum products, and operate oil and gas wells. This business was unsuccessful, the total income for the year 1943 being $4.03 and there being no income for the years 1944, 1945, and 1946.

On September 27, 1946, petitioner contracted to purchase a boat named *Trail*, which was anchored off Washington, D. C., for the total sum of $25,000, paying therefor $1,000 September 27, 1946, $4,000

October 2, 1946, and $20,000 November 21, 1946. It received title to the boat on November 21, 1946. The boat *Trail* was constructed in 1926, was 93 feet long, 127 gross tonnage, and powered by two diesel engines. It required a crew of seven for its successful operation. Petitioner's purpose in purchasing the boat was to derive income therefrom through commercial charters for fishing parties.

The boat was entered on the books as a fixed asset in the amount of $25,000. Improvements were made shortly after purchase (during 1946) in the amount of $2,060.42. This amount was capitalized on Nulex's books.

An effort was made to secure a license so that the boat could be chartered. Nulex was informed by the Coast Guard that under the regulations a license could not be granted. In order to qualify, the wooden decks would have to be replaced by a steel deck. Nulex was unaware of this requirement at the time it purchased *Trail*. Petitioner was unwilling to make such extensive changes and in 1946 decided to sell *Trail*.

On December 3, 1946, the petitioner, having decided to sell the boat, paid the magazine "Yachting" $125 for the insertion in the January 1947 issue of an advertisement of the boat for sale. Between January 1, 1947 and 1952, the boat was listed for sale with yacht brokers in Florida, Massachusetts, Connecticut, Maryland, New York, Illinois, and Washington, D. C. During 1947, $60,000 was the asking price of the boat; by August 1948, this price had decreased to $50,000; by April 1950, the corporation was asking $39,500; and by July 1951, the asking price was reduced to $35,000.

At the annual meeting of the board of directors on February 17, 1947, after discussing *Trail*, a resolution was adopted authorizing a committee "to do all things necessary in connection with the yacht 'Trail', including the expenditure of money to improve the condition of said boat with a view to selling it at a profit and to report to the Directors for appropriate action any reasonable offer that might be made for the boat." At subsequent annual meetings in February 1949, 1950, and 1951, the committee reported that work was done to keep *Trail* in A-1 shape and that none of the inquiries regarding *Trail* had materialized. Until *Trail* was sold in 1952, no offer to buy it had been received. In June 1947, a Chicago broker inquired whether *Trail* was available for charter. Nulex replied that *Trail* was not available for charter but only for sale.

From the time of purchase in 1946 until its sale in 1952, *Trail* was not chartered or rented and was never used as a pleasure craft. It did not produce any income during that period. *Trail* at all times was kept in the water and in operating condition and was not moved from Washington, D. C., except for three trips to Baltimore for repainting. On one of the trips from Baltimore *Trail* was left at Annapolis, Mary-

land, for 4 months because of the possibility of a better market. *Trail* was kept in operating condition in the water rather than in drydock because petitioner felt that prospective purchasers would want to see it operate in order to determine whether they were interested in purchasing it.

The following schedule shows the purpose and amount of expenses from January 1, 1947, to March 26, 1952, incurred by Nulex in connection with *Trail*:

| Year | Watchman | Repairs | Painters and paints | Miscellaneous | Total |
|------|----------|---------|---------------------|---------------|-------|
| 1947 | $2,452.25 | $1,248.57 | $7,157.03 | $662.11 | $11,519.96 |
| 1948 | 1,859.20 | 258.60 | 4,478.97 | 204.29 | 6,801.06 |
| 1949 | 2,407.02 | 962.91 | 1,940.73 | 763.43 | 6,074.09 |
| 1950 | 1,200.00 | 116.93 | 610.90 | 145.35 | 2,073.18 |
| 1951 | 1,788.30 | 281.91 | 1,012.35 | 185.06 | 3,267.62 |
| 1952 | 547.68 | 169.79 | ---------- | 281.33 | 998.80 |

These amounts were charged to expense.

As stated previously, the purchase price of *Trail* ($25,000) and the cost of improvements in 1946 ($2,060.42) were capitalized and entered in the ledger on a sheet named "Boat Yacht 'Trail.'" Sometime after petitioner reached the decision to sell the boat, the sheet in the ledger account was moved from the "Fixed Assets" account to the "Inventory-Current Assets" account in petitioner's accounting records.

No depreciation was ever claimed with respect to *Trail* on petitioner's income tax returns. In its 1946 income tax return petitioner reported the boat in Schedule J (depreciation) and stated, "Being repaired for charter service depreciation to be taken on basis of hours operated." On Schedule L (balance sheet) it listed *Trail* as a depreciable capital asset. On its returns for the years 1947–1951, it did not list *Trail* in Schedule J nor as a depreciable capital asset in Schedule L. It did, however, list *Trail* in Schedule L as finished goods inventory.

If depreciation had been claimed and allowed on *Trail* the petitioner would not have derived a benefit from such deduction except for the calendar year 1952.[1]

On March 26, 1952, *Trail* was sold for $18,000. On page 1, line 1, of petitioner's 1952 return, the sales price of $18,000 was reported as gross sales, and on Schedule A of said return the cost of goods sold showed the following information:

| | |
|---|---|
| Inventory at beginning of year | $27,060.42 |
| Salaries and wages | 799.48 |
| Other costs | 1,878.81 |
| Cost of goods sold | 29,738.71 |

[1] The petitioner reported no gross income for 1946 and gross income (from salvage) in the amount of $35.55 in 1947. On May 19, 1948, petitioner commenced to earn income in the form of commissions as a manufacturer's representative. These commissions were reported in petitioner's income tax returns for the year 1948 and thereafter.

Cost of goods sold in the amount of $29,738.71 was reported on page 1, line 2, of the petitioner's 1952 return and that amount was subtracted from reported gross sales of $18,000 received from the sale of the boat, thus reflecting a loss of $11,738.71.

In the notice of deficiency respondent determined that *Trail* was depreciable property. Respondent further determined that *Trail* had an estimated useful life of 15 years when acquired by the corporation on November 21, 1946. Depreciation allowable on *Trail* as computed by the Commissioner for the period November 21, 1946, to March 26, 1952, is as follows:

| Year | Allowed | Allowable |
|---|---|---|
| 1946 | None | $150.34 |
| 1947 | None | 1,804.08 |
| 1948 | None | 1,804.08 |
| 1949 | None | 1,804.08 |
| 1950 | None | 1,804.08 |
| 1951 | None | 1,804.08 |
| 1952 | None | 451.02 |
| Total | | 9,621.76 |

In his notice of deficiency the respondent added $9,621.76 to petitioner's income (i. e., composed of a disallowance of $9,060.42 of the $11,738.71[2] loss claimed and a gain of $561.34). The additional income was computed as follows:

(a) The boat sold by you in the year 1952 was a depreciable asset and its cost has, therefore, been adjusted for depreciation incurred from the years 1946 to 1952, inclusive.

| | |
|---|---|
| Cost, November 21, 1946 | $25,000.00 |
| Improvements | 2,060.42 |
| Total cost | 27,060.42 |
| Depreciation allowable 1946–1952 | 9,621.76 |
| Adjusted basis | 17,438.66 |
| Selling price, March 26, 1952 | 18,000.00 |
| Long-term capital gain | 561.34 |
| Total cost | 27,060.42 |
| Selling price | 18,000.00 |
| Loss claimed per return | 9,060.42 |
| Gain corrected above | 561.34 |
| Adjustment to income | 9,621.76 |

*Trail*, during all of the years in which petitioner held it (1946–1952), was not property used in trade or business. *Trail* at the time

---

[2] Respondent allowed deductions for the "salaries and wages" and "other costs" in the respective amounts of $799.48 and $1,878.81 shown as part of cost of goods sold on petitioner's return. There is no dispute regarding these items.

of its sale in 1952 was property; but was not stock in trade of Nulex, nor property which would properly be included in its inventory, nor property held by Nulex primarily for sale to customers in the ordinary course of trade or business.

OPINION.

BLACK, *Judge:* Petitioner was formed in 1943 to engage in the oil and gas business but in 1946 was practically dormant. In 1946, it purchased the boat *Trail* for the purpose of entering into the commercial charter business. Shortly after the purchase it learned that it could not secure a license to operate *Trail* as a commercial charter vessel without extensive alterations which it was unwilling to make. Petitioner thereupon decided to sell the boat. It, however, was not able to sell *Trail* until 1952. Petitioner originally carried the boat on its books as a depreciable capital asset but carried it as inventory after the decision to sell was made. It originally intended to depreciate the boat on an hours-operated basis but since it was never used [3] and since it never earned any income, no depreciation deductions were ever claimed. In 1952, it sold *Trail* for $18,000 and claimed a loss on the sale in the amount of $9,060.42, which represents the difference between the selling price and the purchase price of $25,000 plus capital improvements of $2,060.42.

The respondent disallowed the loss and determined a long-term capital gain of $561.34 on the sale. The determination was based on respondent's treatment of the boat as "property used in trade or business." He, therefore, reduced the basis by depreciation allowable in the amount of $9,621.76 computed on a 15-year straight-line basis.

The first issue involves a determination of the amount of gain or loss on the sale of *Trail* in 1952. Section 111 (a), I. R. C. 1939,[4] provides that the gain or loss on the disposition of property shall be the difference between the amount realized and the adjusted basis provided in section 113 (b). Section 113 (b) provides that the basis shall be the unadjusted basis as determined under section 113 (a) except for certain enumerated adjustments. There is no dispute over the amount realized or the unadjusted basis; the dispute is whether the adjustment set forth in section 113 (b) (1) (B) should be made. Section 113 (b) (1) (B) provides, *inter alia,* that adjustment shall be made for depreciation to the extent allowed as deductions but not less than the amount allowable as deductions.

No depreciation was claimed or allowed; the question is whether any depreciation was allowable. This question depends on whether *Trail* was used in trade or business within the meaning of section 23 (l), which provides for the depreciation deductions. Respondent

---

[3] Although it was never used for commercial purposes it was moved from Washington, D. C., where it was anchored, to Baltimore three times for repainting.

[4] All section references are to the Internal Revenue Code of 1939, as amended.

contends that *Trail* was used in trade or business and therefore subject to the allowance for depreciation, while petitioner contends that although *Trail* was purchased with the intent to use it in trade or business it was never so used but was only held for sale.

"Used in trade or business" means devoted to trade or business. *Kittredge* v. *Commissioner*, 88 F. 2d 632 (C. A. 2, 1937), affirming a Memorandum Opinion of this Court. Property once used in trade or business but idled remains in such use unless withdrawn for business purposes or abandoned. *Kittredge* v. *Commissioner*, *supra*.

Here, petitioner was not engaged in any trade or business at the time it purchased *Trail*. Petitioner intended to enter the commercial charter business when it purchased *Trail* but it never entered that business for reasons explained in our Findings of Fact. It seems clear, therefore, that *Trail* was never devoted to trade or business. Petitioner did enter the business of being a manufacturer's representative in 1948 but *Trail* had no connection with and was not devoted to that business. Since *Trail* was not devoted to trade or business, it was not used in trade or business within the meaning of section 23 (1) and, therefore, no depreciation was allowable with regard to it. We agree with petitioner that the basis of *Trail* was $27,060.42 and that it sustained a loss of $9,060.42 on its sale in 1952.

But it does not follow that petitioner's treatment of the loss was correct. Petitioner deducted the loss in full and contends that it is deductible under section 23 (f) which allows a corporation a deduction for uncompensated losses. It seems to us, however, that the loss in question is deductible only under section 23 (g) which provides that deduction for capital losses shall be allowed to the extent provided in section 117. Section 117 (d) provides that in the case of a corporation, losses from the sale or exchange of a capital asset shall be allowed only to the extent of gain from such sales and exchanges. Section 117 (a) (1) defines a capital asset as property held by the taxpayer (whether or not connected with trade or business) but does not include, *inter alia:*

(A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

Petitioner contends that *Trail* falls within the above-quoted exception. Undoubtedly *Trail* was held for sale; but it is clear that it was not so held in the ordinary course of its trade or business. *Trail* was the only boat petitioner owned, bought, or sold. It never attempted to buy and sell any others. Petitioner's business consisted of being a manufacturer's representative. *Trail* was not connected with nor held for sale in the ordinary course of that business. The fact that *Trail* was carried on its books in inventory does not prove

that it was an inventory item. Cf. *Sitterding* v. *Commissioner*, 80 F. 2d 939, 941 (C. A. 4, 1936). Petitioner was merely liquidating a capital asset which it could not use. *Trail*, therefore, cannot be considered as stock in trade or inventory and it cannot be considered to have been held for sale in the ordinary course of trade or business.

The allowable deduction under section 23 (g), if any, can be determined under Rule 50, together with the other items agreed upon in the stipulation of facts filed by the parties.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Murdock, Withey, Fisher, and Forrester, *JJ.*, dissent.