JAMES and GERTRUDE GILMORE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gilmore v. Commissioner
Docket No. 6396-70.
United States Tax Court
T.C. Memo 1974-41; 1974 Tax Ct. Memo LEXIS 277; 33 T.C.M. (CCH) 196; T.C.M. (RIA) 74041; February 19, 1974, Filed James Gilmore, pro se. James D. Thomas, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The respondent determined deficiencies in the Federal income taxes and addition to tax of petitioners as follows: Year
Deficiency in Tax
Addition to Tax Sec. 6651(a) 1964
$ 1,335.16
$ 10.39
1965
1,231.91
-0-
1966
1,199.14
-0-
The following issues are presented for decision: (1) Whether the petitioners are entitled to a deduction as a business loss or worthless debt for any of the taxable years 1964, 1965, and 1966, by reason of the assignment for the benefit of creditors in 1962 of all the assets of their wholly owned corporation; (2) Whether the petitioners are entitled to deductions as interest in the taxable years 1965 and 1966 for finance charges on an automobile retail installment contract; (3) Whether petitioners are entitled to a depreciation deduction in 1966 *280 for two automobiles; (4) Whether petitioners are entitled to a deduction for a capital loss for worthless securities in the taxable year 1966; and (5) Whether the petitioners are liable for an addition to tax under section 6651(a)[1] for the taxable year 1964. FINDINGS OF FACT Some of the facts were stipulated. The stipulation of facts and exhibits are incorporated herein. Petitioners, husband and wife, resided in Lisle, Illinois, when they filed their petition herein. On April 25, 1968, they filed joint Federal income tax returns for the taxable years 1963, 1964, 1965, and 1966, with the district director of internal revenue at Chicago, Illinois. Petitioner James Gilmore (hereinafter sometimes referred to as "petitioner"), his wife and their daughter, were the sole shareholders of a corporation organized under Illinois law in 1954 under the name of Gilmore Enterprises. It was a distributor for Union Carbide Company of liquid nitrogen. In order to provide funds for the daily operations of Gilmore Enterprises, petitioners, in 1960, borrowed from Westchester Savings *281 and Loan $18,000 secured by a mortgage on the real estate occupied by Gilmore Enterprises located in Hillside, Illinois, the title to which was in Gertrude Gilmore, a petitioner herein. Petitioners advanced the $18,000 to Gilmore Enterprises but received no note or other evidence of indebtedness in exchange. Gilmore Enterprises paid no interest to petitioners in connection with the advance. In 1962 Union Carbide ceased to extend credit to Gilmore Enterprises for purchases of liquid nitrogen. At that time Gilmore Enterprises owed Union Carbide approximately $60,000. Union Carbide presented Gilmore Enterprises with a bill for $90,000 representing back rental on liquid nitrogen containers. As a result of the unpaid debts of Gilmore Enterprises, petitioners were forced to assign for the benefit of creditors all of the assets of Gilmore Enterprises. All of its books and records were surrendered to Midwest Credit Management Association (Midwest Credit), which assumed the management and operations of the business of Gilmore Enterprises. At the time of the assignment, petitioners filed as creditors and received approximately $9 on their claim. Midwest Credit later organized a corporation, *282 Liquified Industrial Gas, Inc. (Liquified), to conduct the business formerly conducted by Gilmore Enterprises. Petitioner was employed by Liquified and continued in such employment during the years before us. Petitioners' real property securing the Westchester Savings loan, was transferred to either Liquified or to an individual named Lillis in the assignment proceedings and the transferee assumed the unpaid balance of the loan. On their Federal income tax returns petitioners claimed the following amounts as deductions for business losses from Gilmore Enterprises: 1963
$ 5,468.20
1964
7,275.79
1965
7,042.39
1966
3,334.24
Total
$23,120.62
The following note was attached to their 1963 return: Have taken a business loss deduction on my returns for these past years because I lost $63,000. that I loaned to Gilmore Enterprises, Inc. 4109 May St. Hillside, Illinois. This loss was in January of 1962. Mr. Embrie of Chicago Midwest Credit Management Association 165 N. Canal St. Chicago, Ill. has the company books and can verify this loss. Petitioners claimed no loss relating to Gilmore Enterprises on their 1962 income tax return. Respondent disallowed *283 the business losses deducted on the returns for the taxable years 1964, 1965, and 1966 with the explanation that the taxpayers had failed to establish that losses were sustained in each of those taxable years. On February 13, 1965, petitioners purchased a new 1965 four-door Pontiac Safari station wagon under an installment contract. The total sales price for the automobile was $3,565.85, the finance charge was $641.47, and the total deferred balance was $4,207.32. The contract did not indicate how much of the total finance charge represented interest. The contract provided that the total contract price would be paid in 36 equal monthly installments of $116.87 commencing March 25, 1965. After the contract was executed it was assigned to General Motors Acceptance Corporation (GMAC). Petitioners claimed interest deductions of $178.20 and $213.84 on their returns for 1965 and 1966, respectively, for payments made to GMAC pursuant to the contract. Petitioners computed the interest deductions claimed on a pro rata portion of the finance charge paid in each of the years. During the taxable years 1965 and 1966, petitioners made monthly payments to GMAC in each of the years pursuant *284 to the contract. Respondent disallowed the interest deductions in both years with the explanation that the petitioners had failed to substantiate that such amounts were paid, and, if paid, that the payments constituted interest. While employed by Liquified, Gilmore operated as a sole proprietor on a part-time basis under the name of Big M Gas Distributors (Big M) which was in the business of delivering gas cylinders for the Matheson Company (Matheson) of Joliet, Illinois. In 1966 petitioner received $11,000 as salary from Liquified. Petitioners reported no gross receipts for Big M on their return for 1966. Petitioner used the 1965 Pontiac station wagon for deliveries of Big M and also used a 1966 Chevrolet for related sales work. He charged Matheson $3.50 for each gas cylinder delivered. On their 1966 income tax return, petitioners claimed a depreciation deduction of $2,000 for the two automobiles. The deduction was disallowed by respondent with the explanation that petitioners failed to establish the bases and the useful lives of the automobiles and failed to establish that such automobiles were used in a trade or business or in the production of income. On May 14, 1963, petitioner *285 purchased for $1,000, ten shares of common stock of Arboretum Hospital, Inc., having a par value of $100 per share. On January 14, 1964, Petitioner Gertrude I. Gilmore acquired 10 shares of common stock of Arboretum Hospital, Inc.Arboretum was organized for the purpose of building a hospital in Lisle, Illinois. All of the funds derived from the subscriptions of stock were used for legal and architectural fees paid for obtaining approval of the hospital and seeking a building permit for its construction. Petitioner personally attempted to obtain a building permit by making numerous trips to Springfield, Illinois. As a result of competition from existing hospitals and a failure to obtain additional funds, the officers of the corporation, in the latter part of 1966, abandoned the hospital project. On their 1966 return petitioners claimed a deduction of $1,500 for the worthlessness in that year of their Arboretum Hospital stock. Respondent disallowed the deduction with the explanation that the petitioners had not shown that the loss was sustained in 1966. Petitioners' return for the taxable year 1964 was due to be filed on or before April 15, 1965. It was filed on April 25, 1968. *286 OPINION The first issue presented is whether the petitioners are entitled to deduct as a business loss under section 165(a)[2] or as a worthless debt under section 166(a) (1)[3] advances made to a closely held family corporation. Respondent contends that petitioners' loss occurred in 1962 or their debt, if a debt existed, became worthless in that year. The deductions allowed under sections 165 and 166 are mutually exclusive. Spring City Foundry Co. v. Commissioner, 292 U.S. 182 (1934), rehearing denied 292 U.S. 613 (1934). *287 Petitioners are not entitled to a deduction for a worthless security in any of the taxable years before us because their stock in Gilmore Enterprises became worthless in 1962 when the assets of Gilmore Enterprises were assigned for the benefit of creditors. In the note attached to petitioners' income tax return for 1963, they admitted that the loss was sustained in January 1962. If petitioners' advances to Gilmore Enterprises became worthless as a debt, such worthlessness occurred in 1962 and would have been deductible in that taxable year. Sec. 166(a) (1). Petitioner testified that no deduction was taken by petitioners in 1962 for the $18,000 cash advanced to Gilmore Enterprises. In any event, petitioners have not shown that the advances to Gilmore Enterprises represented loans rather than contributions to the capital of the corporation. By applying all of the criteria used for distinguishing debt and equity, Fin Hay Realty Co. v. United States, 398 F.2d 694, 696 (C.A. 3, 1968), it is apparent that the $18,000 advance by petitioners was a contribution to capital and not a loan. The advance was not evidenced by a note; there was no interest paid; the advance was *288 subject to the risks of the business by being used for the daily operating expenses at a time when the corporation owed a large sum to Union Carbide; the corporation's intent to repay the loan was not demonstrated, nor was there any expectation on the part of the petitioners that the advance would be repaid, and there is no indication that petitioners' capital investment in the corporation was adequate. Because we have concluded that the $18,000 advance to Gilmore Enterprises was a contribution to capital, petitioners would be entitled to a deduction for worthless securities in 1962 under section 165(g). [4]The term "security" in section 165(g) includes advances made to a corporation. Phil Kalech, 23 T.C. 672, 681 (1955). The loss is deductible, however, only in the taxable year that worthlessness occurs and in this case the advances became worthless in 1962 when petitioners' stock in Gilmore Enterprises became worthless. There is no evidence that petitioners claimed a deduction for the worthless stock or advances in 1962; therefore, they cannot carry over their loss to subsequent *289 taxable years under the provisions of section 1212(b). [5]Section 1212(b) allows a loss to be carried over to years subsequent to the year of the loss to the extent of the excess of capital loss over capital gains for that year. Such excess is then allowed as a capital loss in the succeeding taxable year. Sec. 1212(b) (1). Because petitioners did not prove whether they deducted any loss in 1962 and whether they had any capital gains in 1962, we cannot decide whether an excess loss existed to carry over to the years before us. We must, therefore, deny them any capital loss deductions in 1964, 1965 and 1966. *290 Respondent contends that petitioners' interest deductions of $178.20 and $213.84 for 1965 and 1966, respectively, should be disallowed because petitioners have not proved that payments pursuant to the automobile installment contract were made by them in the taxable years involved and that such payments included interest. Section 163(a) allows a deduction for all interest paid within the taxable year on indebtedness. Although petitioners did not submit any documentary evidence proving the payments on the automobile, petitioner testified that such payments were made and his testimony was not impeached. Such testimony alone is sufficient to overcome the presumption of correctness of the Commissioner's determination. Callie E. Robertson, 28 B.T.A. 635, 640 (1933); Blackmer v. Commissioner, 70 F.2d 255 (C.A. 2, 1934). The installment contract provided for $641.47 as finance charges but did not specify how much of that sum represented interest. Finance charges are not *291 deductible unless they represent "interest" within its technical definition. Section 163(b)[6] provides that installment payments made during the year are treated as if they included interest equal to six percent of the average unpaid balance under the contract for the taxable year. Applying section 163(b) permits petitioners to deduct $178.20 in 1965 and $150.76 in 1966. Sec. 1.163-2, Income Tax Regs.
*292 Respondent contends that petitioners are not entitled to deductions for depreciation in 1966 on the 1965 Pontiac station wagon and on a 1966 Chevrolet because they have failed to prove that the automobiles were used in their trade or business, that they owned the automobiles and what the bases for depreciation or useful lives of the automobiles were. Although the evidence presented by the taxpayer was meager, petitioner's unimpeached testimony relating to the depreciation deduction taken on the 1965 Pontiac station wagon was sufficient to overcome the presumptive correctness of the Commissioner's determination. Gilmore established that he engaged in the trade or business of delivering gas cylinders as a sole proprietor under the name of Big M, and that he used the station wagon for deliveries. His expectation that the business would someday prove profitable was genuine. See Margit Sigray Bessenyey, 45 T.C. 261 (1965), affd. 379 F.2d 252 (C.A. 2, 1967). The requirement in section 167 that the depreciation deduction is permitted for property "used in the *293 trade or business" means that the property must be devoted to a trade or business. Nulex, Inc., 30 T.C. 769, 775 (1958). Since Gilmore did not prove the exact extent to which the station wagon was devoted to the business of Big M, we must approximate this extent in addition to making determinations of the basis for depreciation, useful life and salvage value of the station wagon. Estate of E. P. Lamberth, 31 T.C. 302, 318 (1958); Cohan v. Commissioner, 39 F.2d 540 (C.A. 2, 1930). We are not convinced that the station wagon was devoted to the trade or business of Big M more than 50 percent of its use because it was a part time operation in addition to petitioner's employment with Liquified. Based upon our best estimate, we conclude that a reasonable allowance for depreciation on the station wagon is $500 per year. Petitioners failed to prove any business use of the 1966 Chevrolet. They are, therefore, entitled to no depreciation on that car. Respondent objects to an allowance for loss on the Arboretum stock in 1966 for two reasons: (a) the taxpayers have not proven that the Arboretum stock became worthless in 1966, and (b) because they *294 reported no capital gains for that taxable year, petitioners may not deduct more than $1,000 under the provisions of section 1211(b). [7]The determination of the year in which stock becomes worthless is strictly a factual determination. A practical, realistic approach of all the facts and circumstances determines the worthlessness of stock. Although the petitioners' subjective belief as to the worthlessness is not to be ignored, such a factor is not alone decisive. Boehm v. Commissioner, 326 U.S. 287 (1945). Petitioner's belief of the worthlessness of the stock was not based upon his mere subjective belief. He testified that the corporate venture was abandoned in the latter part of 1966 for lack of funds and because of obstacles created by existing hospitals. The original capital contributions of the corporation were exhausted by 1966 by the payments for architectural and legal fees incurred in attempting to obtain approval of the hospital and in seeking a building permit. Petitioner himself was involved in the venture and made numerous trips to Springfield, Illinois, to *295 obtain a building permit for the new hospital. He was, therefore, qualified to state when attempts to continue the project were abandoned and he testified it was 1966. Petitioners are, therefore, entitled to a deduction for the worthlessness of the Arboretum stock under section 165(g) in the taxable year 1966. The amount of the loss realized is $1,000, petitioners' cost basis in ten shares of the stock. There was no evidence of the cost of the shares in the name of Petitioner Gertrude I. Gilmore. *296 Because petitioners' taxable income for 1966 exceeded $1,000, and because they realized no capital gains for that year, the deduction allowable to petitioners as a loss on their stock is $1,000. Respondent determined an addition to tax against petitioners under section 6651(a) for the taxable year 1964 by reason of the late filing of their Federal income tax return for that year. Section 6651(a) is a penalty provision for failure to file a return on or before the date it is due to be filed. Petitioners filed their return for 1964 three years late but offered no explanation as to its delinquency. They did not, therefore, establish that the delinquency was due to reasonable cause. The presumption that the late filing was due to willful neglect is not overcome and they are liable for the addition. Estate of Saul Krampf, 56 T.C. 293, 297 (1971). Decision will be entered under Rule 155. Footnotes
1. All section references are to the provisions of the Internal Revenue Code of 1954, as amended. ↩
2. SEC. 165↩. LOSSES. (a) GENERAL RULE. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. 3. SEC. 166. BAD DEBTS. (a) GENERAL RULE. - (1) WHOLLY WORTHLESS DEBTS. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year. ↩
4. SEC. 165. LOSSES.
(g) WORTHLESS SECURITIES. - (1) GENERAL RULE. - If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of the subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset. (2) SECURITY DEFINED. - For purposes of this subsection, the term "security" means - (A) a share of stock in a corporation; (B) a right to subscribe for, or to receive, a share of stock in a corporation; or (C) a bond, debenture, note, or certificate, or other evidence of indebtedness, issued by a corporation or by a government or political subdivision thereof, with interest coupons or in registered form. ↩
5. SEC. 1212. CAPITAL LOSS CARRYBACKS AND CARRYOVERS. (b) OTHER TAXPAYERS. - (1) IN GENERAL. - If a taxpayer other than a corporation has a net capital loss for any taxable year - (A) the excess of the net short-term capital loss over the net long-term capital gain for such year shall be a short-term capital loss in the succeeding taxable year, and (B) the excess of the net long-term capital loss over the net short-term capital gain for such year shall be a long-term capital loss in the succeeding taxable year. ↩
6. SEC. 163. INTEREST.
(b) INSTALLMENT PURCHASES WHERE INTEREST CHARGE IS NOT SEPARATELY STATED. - (1) GENERAL RULE. - If personal property or educational services are purchased under a contract - (A) which provides that payment of part or all of the purchase price is to be made in installments, and (B) in which carrying charges are separately stated but the interest charge cannot be ascertained, then the payments made during the taxable year under the contract shall be treated for purposes of this section as if they included interest equal to 6 percent of the average unpaid balance under the contract during the taxable year. For purposes of the preceding sentence, the average unpaid balance is the sum of the unpaid balance outstanding on the first day of each month beginning during the taxable year, divided by 12. * * * . ↩
7. SEC. 1211. LIMITATION ON CAPITAL LOSSES. (b) Other Taxpayers. - In the case of a taxpayer other than a corporation, losses from sales or exchanges of capital assets shall be allowed only to the extent of the gains from such sales or exchanges, plus the taxable income of the taxpayer or $1,000, whichever is smaller. For purposes of this subsection, taxable income shall be computed without regard to gains or losses from sales or exchanges of capital assets and without regard to the deductions provided in section 151↩ (relating to personal exemptions) or any deduction in lieu thereof. * * *.