STUART L. REEMS AND ELIZABETH BECKER-REEMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reems v. Commissioner
Docket No. 21308-92
United States Tax Court
T.C. Memo 1994-253; 1994 Tax Ct. Memo LEXIS 256; 67 T.C.M. (CCH) 3050; June 6, 1994, Filed *256 For petitioners: Michael L. Miller. For respondent: Jeanne Gramling. KORNER
KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(a)(1) Sec. 6661 Sec. 6662(a)
1988
$  6,400
$ 320
$ 1,363
--
1989
23,202
--
--
$ 4,640
After reaching agreement on several matters, the following issues remain for us to decide: (1) Whether certain claimed expenses of petitioner Stuart L. Reems (hereinafter petitioner) for the years 1988 and 1989 with respect to the use of a Toyota pickup truck should be allowable at all; if so, whether they should be allowed as Schedule A or Schedule C expenses; (2) whether petitioners should be allowed certain claimed expenses in connection with an activity called Forestry Products on a Schedule C attached to petitioners' 1989 income tax return, as deductible business expense in that year; (3) whether petitioners are liable for self-employment tax for the taxable years 1988 and 1989; and (4) whether petitioners are liable for additions to tax as follows: (a) Additions to tax for negligence for the *257 year 1988; (b) additions to tax for substantial understatement for the taxable year 1988; and (c) an accuracy-related addition to tax for the taxable year 1989.
At the time of filing their petition herein, petitioners were residents of the State of North Carolina. They filed joint income tax returns for the years 1988 and 1989. For ease of reading and understanding, our findings of fact and opinion with respect to each of the above issues will be combined. I. The Toyota Expenses
In 1988 and 1989, the years in issue, petitioner was a traveling sales representative, representing manufacturers, principally located in Ohio and Pennsylvania, of various items. His sales territory, however, covered the States of West Virginia, Virginia, North Carolina, South Carolina, Georgia, Tennessee, and Florida. In connection with his traveling sales representative occupation, petitioner had to travel extensively within the above territory to call upon his customers. He did this travel almost entirely by automobile and covered many thousands of miles each year. Ordinarily, he would travel on his business journeys in a small Honda automobile, which got excellent gasoline mileage *258 and was very sparing in the use of tires. In order to carry other passengers, as well as sometimes to carry spare parts for customers, as well as for the purpose of navigating the highways in bad weather (especially in the mountainous territory that he served), petitioner also used a Ford Bronco vehicle, which had four wheel drive and a very large engine, but was very expensive for him to operate. In 1988, petitioner found a Toyota pickup truck with four wheel drive that he considered would suit his purposes better than the expensive Bronco, and he bought it. He then tried to dispose of his Ford Bronco, but was not successful in doing so until 1990. In the meantime, however, in the years 1988 and 1989, he made increasing use of the more economical Toyota. Petitioner kept contemporaneous records of his mileage and expenses with respect to his vehicles. In Schedules C of petitioners' joint returns for 1988 and 1989, petitioner claimed 80-percent business use of the Toyota in connection with his traveling sales representative activities, and accordingly he deducted $ 2,899 in 1988 and $ 3,888 in 1989 with respect to the Toyota because of claimed expenses such as depreciation, interest, *259 taxes, and insurance. Respondent disallowed these claimed deductions upon audit, but apparently allowed a certain amount for each year on account of taxes and interest, as deductions allowable under Schedule A. We think it is clear that under the provisions of section 162(a)[1] a taxpayer may deduct all ordinary and necessary expenses incurred in carrying on a trade or business. We think that the testimony of petitioner at trial herein, as well as the exhibits in this record, adequately establish for purposes of section 274(d)(4) that the use of the four wheel drive Toyota was an ordinary and necessary requirement of petitioner's business as a traveling sales representative, and that the amounts that he claimed on account of the use of this vehicle (80-percent business use claimed) were an ordinary and necessary business expense which should be allowable on petitioners' Schedule C relating to his business of traveling sales representative. It further follows from this that the portions of these deductions that respondent allowed as Schedule A deductions should be removed, so as to avoid duplication. We sustain petitioner's claims regarding the substantiation of the claimed deductions *260 on account of the Toyota. II. Boulder Creek Farms Expenses
For some time, petitioner had the desire to own land and to raise and harvest timber. His preference was for mountain land because it was cheaper. He had the desire to acquire such property, improve it, and engage in timber farming, that he thought was a long-term source of profit. In 1988, he saw an advertisement in the newspaper concerning some land. He went out to see it and recognized it as land that he had hunted on as a youth back in the 1950s. This was mountainous land lying partly in Henderson County and partly in Buncombe County, North Carolina, consisting of 123 acres more or less. The land was unimproved, and no crops were growing on it. It had been timbered by the then owner, Mr. Herron, some years before, but nothing further had been *261 done to it. The property was attractive to petitioner. He made an offer on it that was accepted. He went to settlement, with the assistance of a loan, and acquired the property on December 8, 1989. The purchase price of the property was $ 135,000. Prior to his purchase of the property (which he called Boulder Creek Farms), petitioner had consulted with an official at the lending institution that had loaned him the money to buy it, with regard to the best uses to be made of the property. Again, as the settlement date for the purchase of the property approached, petitioner consulted with Bob Johnson, whom petitioner identified as a knowledgeable person in timber, and a woodsman, and got Mr. Johnson's assistance in verifying the property lines of Boulder Creek Farms, checking the acreage, reviewing the logging roads, and reviewing the water and well availability on the property. For this and other services, petitioner paid Mr. Johnson $ 3,400 in cash. After he acquired the property on December 8, 1989, petitioner immediately engaged Mr. Johnson to go on the property and perform the following services: Daylighting the roads; [2] repairing the existing logging roads and maintaining *262 them, including taking out some ruts and otherwise smoothing and grading; and creating certain other logging roads on the property which would permit the passage of heavy equipment to clear the area, cut, and drag away the timber. All this work was accomplished between December 8, 1989, and the end of the year, and for this work, petitioner paid Mr. Johnson $ 32,386 in cash. After the end of 1989, further work along this line was performed, including graveling some roads, installing culverts, locating future house and building sites, and the like. Between December 8, 1989, and the end of the year, petitioner sold two walnut trees to Mr. Johnson, and also sold two or three truckloads of firewood off the property to a Mr. Huffman for about $ 250. The walnut trees were sold for about $ 1,800, and the firewood was generated from the clearing and daylighting *263 activities that Mr. Johnson was performing. Not long after he had acquired the property, petitioner also made some incidental sales of rhododendron plants and fern that were in existence there. In 1990, after the end of the period before us, petitioner hired another person to perform road and clearing work on the property, and he sought the advice of the North Carolina Division of Forestry Resources regarding Boulder Creek Farms. He received considerable advice from the forestry department, and, still later, he entered into a comprehensive plan regarding the care, maintenance, management, and improvement of the property. All these plans and agreements were consistent with petitioner's original intent to develop and use the property of Boulder Creek Farms over the years as a producer of timber that would yield a cash profit to him. Petitioner's approach to the acquisition of Boulder Creek Farms and its development was carefully considered and focused. Petitioner sought help and advice from other people whom he considered knowledgeable in the area; after the acquisition of the property, he confirmed his desires and prospects by consulting with the forestry authorities of the State *264 of North Carolina; he was not unfamiliar with the North Carolina mountain area, having grown up there. He exhibited a fairly knowledgeable grasp of the property and its prospects, fortified by opinions that he sought of competent people. After the end of 1989, he continued his plans to establish a commercial timbering business by further improvements to the property. We conclude that in the latter part of 1989, both before and immediately after he acquired the Boulder Creek Farms property, petitioner had already undertaken the first steps in his program to start a commercial timbering business, by clearing and daylighting existing roads and improving the same by eliminating ruts. He hardly had time to do more than this before the end of 1989, and we cannot find as a fact that as of December 31, 1989, petitioner had commenced his business at that location. On that date, no new business had yet been commenced at Boulder Creek Farms, and the evidence in this case is clear that petitioner was not acquiring a going business that was already being conducted at Boulder Creek Farms or elsewhere. As the Court of Appeals for the Fourth Circuit has said: The uniform teaching of these *265 several cases is that, even though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not "engaged in carrying on any trade or business" within the intendment of section 162(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized. [Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated and remanded on other grounds 382 U.S. 68 (1965); fn. refs. omitted.]
The facts that we have found indicate that the disputed expenditures here may be fairly characterized as "start-up expenditures". This situation seems to be clearly covered by section 195, which starts off by flatly stating in subsection (a): "Except as otherwise provided in this section, no deduction shall be allowed for start-up expenditures." While it is true that section 195(c)(1) defines start-up expenditures as those which would include the expenditures that petitioner incurred in this case in 1989, [3] there are limitations on when and how such *266 expenditures may be deducted. They may, if so elected by the taxpayer, be treated as deferred expenses and be allowed as a deduction prorated equally over a period of not less than 60 months, beginning with the month in which the active trade or business begins, sec. 195(b)(1). However, as the above subsection points out, the taxpayer must make such an election, and the time for making it shall be not later than the time prescribed by law for filing the tax return for the taxable year in which the trade or business begins, sec. 195(d)(1). *267 We do not find here that the active business of forestry at Boulder Creek Farms had been begun by petitioner by the end of 1989. We do not know whether it has been begun even yet. Although we think that the expenditures involved here were clearly start-up expenditures within the meaning of section 195, if petitioner wishes to deduct them, he must comply with the requirements of that section, which includes claiming an amortization deduction with respect to them on his tax return beginning with the year in which the active trade or business is commenced. As of the end of the year 1989, that time had not yet arrived. No regular harvesting or selling of timber had begun. Cf. Kydd v. Commissioner, T.C. Memo. 1983-749. III. Self-Employment Tax
The parties do not appear to contest that petitioner is liable for the self-employment tax under sections 1401 and 1402 because of his activities as a traveling sales representative in the years in question. Respondent apparently has not determined that there was any unreported gross income in 1989 from the Boulder Creek Farms efforts. Respondent's only increase to self-employment income in the years *268 in question is by reason of disallowing certain deductions in both years which petitioners were claiming, some relating to petitioner's sales representative activity, and some referring to petitioner's activities at Boulder Creek Farms. To the extent that such issues have not been settled, they are disposed of in this opinion, and a Rule 155 computation hereunder will reveal the correct amount of self-employment tax that is due. 4. Additions To Tax
A. Negligence
For the year 1988, respondent determined that petitioners were liable for an addition to tax for negligence under the provisions of section 6653(a). Such addition to tax was determined by respondent because of the disallowance of certain claimed deductions on account of interest as well as on account of some of petitioners' claimed expenses as a manufacturer's representative. Negligence has been defined as the lack of care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934 (1985). The burden of proof is on petitioners to show that the addition to tax for negligence should not be applied. Rule *269 142(a); Enoch v. Commissioner, 57 T.C. 781 (1972). In our opinion, the items in dispute here as to which the negligence penalty was asserted were matters of legitimate contention between petitioners and respondent. Some of those disputed items have been conceded by petitioners; others have been litigated and have been disposed of in this opinion. Our feeling is that petitioners have adequately demonstrated due care and attention in preparing and filing their return for 1988, and that no willfulness, negligence, or disregard of respondent's rules and regulations was involved. Petitioners may not have been right on all counts, but we are satisfied that they were not negligent in their preparation of the 1988 return. Respondent's determination of an addition to tax for 1988 for negligence is disapproved. B. Substantial Understatement
Under section 6661, as it was in force during the year 1988, the law provided for an addition to tax equal to 25 percent of the underpayment due to a substantial understatement. Such understatement was defined as being substantial if it exceeded the greater of 10 percent of the tax required to be shown on the return *270 or $ 5,000, whichever was greater. Sec. 6661(b)(1)(A). Although it would appear to be fairly automatic, the law further provided that the penalty could be avoided if the erroneous treatment of an item by the taxpayer (resulting in such deficiency) was supported by substantial authority, or if, with respect to any such erroneous substantial item, the facts relating to the taxpayer's treatment and surrounding circumstances were adequately disclosed in a statement which was attached to the return. Sec. 6661(b)(2)(B). Petitioners on brief have not enlightened us with respect to this item at all, although we do not believe that they have abandoned the issue. Respondent merely points out that of the total deficiency of tax for 1988 in the amount of $ 6,400 that was determined, the largest part thereof was attributable to claimed automobile expenses of $ 15,668, which petitioners concede to be nondeductible. Petitioners have not enlightened us with any statement of compelling authorities that exist in their favor, and the stipulated return for 1988 which is in the record does not disclose any significant statements attached to the return that relate to the conceded items giving rise *271 to the potential deficiency here. We must hold that if the Rule 155 computation that will result from this opinion produces an understatement of tax that fits within the statutory definition provided by section 6661(b)(1), then the prescribed addition to tax will be applicable, otherwise not. C. The Accuracy-Related Addition
For the year 1989, former section 6661 having been repealed, respondent determined an addition to tax under the provisions of section 6662(a). This provision will apply if any one or more of five listed reasons for the determined underpayment apply. The only one that has any relevance in this proceeding is section 6662(b)(2), involving a substantial understatement of income tax, and here, this section incorporates the same standards and provisions for application as the former section 6661, but imposes an addition to tax equal to 20 percent of the portion of the underpayment of tax to which section 6662 applies. See section 6662(a). In the instant case, for the year 1989, we have sustained in large part respondent's determinations, to the extent that the issues raised in the statutory notice of deficiency have not already been conceded by petitioners. *272 We do not think the special exception to imposition of the penalties provided in section 6662(d)(2)(B) will apply here. Although our determination of the principal issue in this year may be based on a somewhat different interpretation of the law than that espoused by respondent, it nevertheless results that to a large extent, respondent's determination will have to be sustained. Accordingly, if it results that the Rule 155 computation to be done hereunder produces an underpayment to which section 6662 would apply, that penalty will be imposed; petitioners, who had the burden of proof in the matter, have offered us no arguments to the contrary. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted.↩
2. "Daylighting" means to clear and cut away overhanging branches, trees, vines, etc., so as to allow sunlight to play upon the logging roads and promote their dryness.↩
3. Sec. 195(c)(1) states: (1) Start-up Expenditures. -- The term "start-up expenditure" means any amount -- (A) paid or incurred in connection with -- (i) investigating the creation or acquisition of an active trade or business, or (ii) creating an active trade or business, or (iii) any activity engaged in for profit and for the production of income before the day on which the active trade or business begins, in anticipation of such activity becoming an active trade or business, and
(B) which, if paid or incurred in connection with the operation of an existing active trade or business (in the same field as the trade or business referred to in subparagraph (A)), would be allowable as a deduction for the taxable year in which paid or incurred.↩